BAIRD *v.* STATE.

*(Nashville,* December Term, 1942.)

Opinion filed January 9, 1943.

W. B. WILLIAMS and GLENDALE O. SCOTT, both of Lebanon, for plaintiff in error.

· NAT TIPTON, Assistant Attorney-General, for the State.

MR. JUSTICE NEIL delivered the opinion of the Court.

The plaintiff in error was indicted in the Criminal Court of Wilson County upon the charge of "unlawfully, on Sunday, and other Sundays," etc., following his usual vocation by operating a certain beer parlor, where beer was sold, "to the manifest corruption of his own and the public morals, to the common nuisance of the people, against the peace and dignity of the State." A motion was made to quash the said indictment on several grounds, which was overruled, and the jury found the defendant guilty as charged and imposed a fine of one dollar and the costs of the case. Thereupon a motion for a new trial was seasonably made and overruled by the trial judge.

The case is here upon appeal from the judgment, and numerous assignments of error have been filed. These assignments relate (1) to the sufficiency of the evidence; (2) for error in overruling the motion to quash the indictment; (3) for error in charging the jury; (4) for error in failing to charge certain special requests; (5) for error in the admission of and exclusion of testimony; (6) for improper argument of counsel; (7) for failure to grant a new trial.

At the beginning of the trial the counsel for the defendant and the district attorney-general entered into the following stipulation:

"The Court: (To the Jury) The State and the Defendant have just here stated that you might treat it as a fact, and it is stipulated as a fact, that the defendant, Macey Baird, for a period of twelve months or more before the return of the presentment in this case, was licensed by Wilson County and the State of Tennessee to conduct a restaurant business in the building referred

to and known as 'Twin Gables,' and that during that same period of time he was also licensed to sell beer in that building known as 'Twin Gables', and that he had a permit to sell beer during that period of time issued to him by the County Court and by the Beer Board of Wilson County, and that he has complied with all the requirements of the Beer Act prerequisite to the sale of beer at 'Twin Gables', and has complied with the legal requirements prerequisite to the operation of a restaurant business at that place."

The statute which is alleged to have been violated and is the basis of the indictment reads as follows:

"Sec. 5253. Sunday, working on; forfeiture.—If any person shall be guilty of exercising any of the common vocations of life, or of causing or permitting the same to be done by his children or servants, acts of real necessity or charity excepted, on Sunday, he shall, on due conviction thereof before any justice of the peace of the county, forfeit and pay ten dollars, one-half to the person who will sue for the same, the other half for the use of the county."

The record reveals that from the beginning of the trial to its close counsel for the defendant and the attorney-general were in a constant wrangle as to the gravamen of the charge, i. e., whether it was for selling beer on Sunday, or for carrying on a common vocation of life on Sunday, in violation of the foregoing section of the Code.

When the defendant was arraigned, his counsel challenged the sufficiency of the indictments upon the ground (1) that it did not charge the violation of the criminal law; (2) that he had a permit to sell beer and "there is no charge that he acted illegally with respect to the sale of beer"; (3) that "the statute had no application to the

operation of a beer parlor outside of an incorporated town.'' On motion for a new trial, it was again urged upon the trial court that when the Act of 1803 was passed ''there were no such things as beer parlors,'' separate and apart from saloons, and hence the prohibition of a beer parlor could not have been contemplated by the Legislature. In the examination of witnesses the district attorney-general stressed the fact that defendant was selling beer on Sunday. Counsel for defendant constantly raised the question that it was not against the law to sell beer on Sunday. Violent objection was made to the statement of the sheriff that the defendant operated a ''beer joint''.

We think the counsel misconceived the nature of the charge upon which the defendant was tried. It was urged before the trial court, and in this Court, that the law does not prohibit the sale of beer on Sunday and for this reason the indictment did not charge a criminal offense. It must be conceded that the sale of beer is a lawful business, but it does not follow that one who is engaged in such business as his usual vocation in life is permitted to follow it on Sunday. The object and purpose of this statute was to promote morality in every community; that Sunday being generally recognized as a holy day and set apart as a day of rest, all common vocations of life should be suspended except those of real necessity. Laws and ordinances enjoining the observance of the Sabbath have been uniformly upheld by this Court. *Congregation* v. *Peres,* 42 Tenn. (2 Cold.), 620; *Parker* v. *State,* 84 Tenn. (16 Lea), 476, 1 S. W., 202; *Graham* v. *State,* 134 Tenn., 285, 183 S. W., 983.

In *Parker* v. *State, supra,* it was held that ''the carrying on of one's ordinary business on Sunday is an indictable offense at the common law, and also under the

statutes of Tennessee, if conducted so openly as to attract public attention, and thereby tend to corrupt public morals." Where one stands indicted for carrying on his usual vocation on Sunday, it is a matter of defense, if the accusation is admitted, to show that such usual vocation is one of real necessity. Surely it will not be contended that the operation of a beer parlor and dance hall on Sunday is a real necessity.

It is earnestly insisted by counsel for defendant that his business was not that of conducting a beer parlor; that his real business was running a restaurant and the sale of beer was merely an incident thereto; that after twelve o'clock on Saturday night beer was sold only with something to eat.

The defendant operated a business on the Lebanon Road, eighteen miles from Nashville, known as "Twin Gables." He had a restaurant license and also a permit from the beer board of Wilson County to sell beer. There were a number of tables and chairs in the building for the use of customers. No question is made but that he operated his business at all hours of the night and every day of the week. There is no evidence in the record to show the quantity of food purchased by the defendant and sold during any week, or the number of persons who were actually served meals on any day of the week or during any given period of time. It appears from the record that at times customers became intoxicated. No witness testifies that the defendant ever sold any whiskey, although it does appear from the testimony of certain officers that whiskey bottles were seen on tables in the building where customers were seated. It is conclusively shown that large crowds congregated at "Twin Gables" on Saturday night and remained throughout the night. A number of arrests were made of persons who were

intoxicated and taken out of the defendant's place of business. Several were arrested outside of and in front of the building.

The testimony of the defendant is to the effect that he made an earnest effort to prevent whiskey being brought into his place and that he tried to conduct an orderly business. The defendant proves a good character, and a number of reputable people testified that they often visited "Twin Gables" and while they were there it was orderly; that defendant "had a nice place".

██ ██ It cannot be doubted that the sheriff and his deputies were making an effort to stop the sale of beer on Sunday, not only at the defendant's place but every other place in Wilson County. It is readily conceded that where one conducts a *bona fide* restaurant on Sunday, it is one of the usual vocations that is regarded as a necessity and therefore not subject to prosecution under the statute. The indictment in the instant case charges that defendant's "usual vocation" was that of "operating a certain beer parlor". Of course operating such a place is not a business of real necessity. If it should appear that the defendant took out a restaurant license merely as a blind and that his real business was selling beer, he would not come within the excepted class and be immune from prosecution; but if it should appear that he operated a *bona fide* restaurant and sold beer as an incident to the serving of meals, then the business would not be in violation of the statute. We think it is proper to state in this connection that serving meals means something more than peanuts, popcorn, potato chips, and an occasional sandwich.

██ The learned trial judge submitted the case to the jury upon the rightful assumption that the indictment charged a violation of the law against doing business on

Sunday. The said indictment follows the language of the Act of 1803. The charge of the Court, which we have carefully examined, was not subject to exception. The issue was fairly presented as to whether the defendant was operating a *bona fide* restaurant on Sunday or a beer parlor. The Court charged the jury as follows:

"I charge you, Gentlemen of the Jury, further, that the sale of beer even on Sunday would not be, and is not, an indictable offense, unless and except such selling of beer consists of the exercising of the common avocation of life, or the causing or permitting the same to be done by one's servants. In other words, Gentlemen of the Jury, in order that you may have the matter as fully in mind as possible, the offense for which the defendant stands presented is not merely for the sale of beer on Sunday, which is charged to be the operation of a beer parlor; but I charge you, Gentlemen of the Jury, that the mere sale of beer on Sunday would not constitute a violation of the law, unless the selling of that beer on Sunday constituted the exercising of a common vocation of life of the person involved, or the causing or permitting the same to be done by his children or servants, acts of real necessity or charity excepted.

"I charge you further, Gentlemen of the Jury, that this statute which I have read to you, the successive violation of which would constitute a violation of the law, does not apply to the operation of a restaurant, and accordingly, if you should find that the defendant was operating a restaurant and was not operating a beer parlor on successive Sundays, or fail to find beyond a reasonable doubt that the defendant was operating a beer parlor on a succession of Sundays, then this defendant would be entitled to a verdict of not guilty, the offense being, Gentlemen of the Jury, the exercising of the com-

mon vocation of life on the Sabbath, or on Sundays, and the vocation not being an act of real necessity.''

In considering their verdict the jury doubtless considered the fact that there was no evidence, record or otherwise offered, as to the quantity or character of food that was sold by the defendant, or the number of persons who were served meals on any given day or week, and we think this was important in determining whether *bona fide* meals were regularly served, or only peanuts and potato chips. The verdict does not preponderate in favor of the defendant's innocence.

We have carefully considered the numerous assignments of error relating to special requests which were refused and they are overruled because they fail to make any distinction between a sale of beer on Sunday and doing business on Sunday in violation of law. The trial judge correctly stated the law applicable to this case. The assignment of error bearing upon alleged improper argument of the attorney general must be overruled. We think it clearly appears that he was arguing that the purpose of the statute was to promote morality and public decency, and we hold that it was not an improper argument. Responding to the assignment of error touching the admissibility and competency of certain testimony, it appears that the trial judge had a hard time keeping the counsel within proper bounds and in confining the testimony to the real issues in the case. He was wholly impartial and made every effort to give the defendant a fair trial. We hold that he did not commit error in admitting and excluding the testimony complained of.

After a full consideration of all the assignments of error, and finding that they are without merit, the judgment of the trial court must be affirmed.