IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
NOVEMBER 4, 2002 Session

## STATE OF TENNESSEE, EX REL MOORE & ASSOCIATES, INC. v. TERRENCE L. COBB, DIRECTOR OF CODES ADMINISTRATION OF THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

**Direct Appeal from the Chancery Court for Davidson County**
**No. 02-113-I     Irvin H. Kilcrease, Jr., Chancellor**

---

**No. M2002-00504-COA-R3-CV - Filed May 27, 2003**

---

This is an appeal of a denial of a writ of mandamus. Moore & Associates requested the lower court to require the Department of Codes Administration to issue an occupancy permit for the Hilton Garden Inn pursuant to the Metropolitan Code, Title 16, Chapter 36, Section 020(A). The Department of Codes Administration refused to issue the occupancy permit for the building because it felt that the landscape buffer yard did not comply with plans submitted. The trial court agreed with the Department and found that the term "building" includes the landscape buffer yard. For the following reasons, we reverse.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY KIRBY LILLARD, J., joined.

Eugene N. Bulso, Jr., Joseph G. DeGaetano, Nashville, TN, for Appellant

Karl F. Dean, Director of Law, Daniel Champney, Kelli Haas, John L. Kennedy, Metropolitan Attorneys, Nashville, TN, for Appellee

**OPINION**

**Facts and Procedural History**

Moore & Associates, Inc. ("Moore") designed and constructed the Hilton Garden Inn hotel located in Nashville. Moore acted as the hotel owner's agent for the purpose of obtaining all necessary permits for the hotel from the Department of Codes Administration of the Metropolitan Government of Nashville and Davidson County, Tennessee ("the Department"). After substantial

completion of the hotel, the Department issued a temporary use and occupancy permit on August 31, 2001 and stated that its inspection showed the "work performed substantially complies with the requirements of the applicable codes and ordinances." On September 24, 2001, Moore asked the Department for a final inspection so that a permanent occupancy certificate would be issued. On September 26, 2001, the Department replied that since the building had not been constructed according to the plans Moore had submitted, a final use and occupancy permit could not be issued until the building was constructed according to the approved plans. On October 1, 2001, Moore requested clarification as to what specific problems existed. According to Moore, the Department never responded. On December 3, 2001, Moore again wrote to the Department, and again received no response.

On January 11, 2002, Moore filed a Verified Petition for Writ of Mandamus, asking for an alternative writ of mandamus and a peremptory writ of mandamus. The Davidson County Chancery Court ordered an alternative writ of mandamus to be issued ordering the Department to issue the permit or appear on February 6, 2002, to show cause why a peremptory writ of mandamus should not be issued. A hearing was held on February 6, 2002. The court issued a Memorandum and Order on February 15, 2002, that denied the motion for mandamus. The trial court found that a contested landscape buffer yard was the reason that the Department stated the building had not been constructed according to the plans. The trial court found that the landscape buffer yard came within definition of "building" as defined by Chapter 16.24.030 of the Metropolitan Code. The trial court found that the landscaping buffer was not built according to the approved plans, and held that the Department was correct in not issuing the permanent occupancy permit. Moore timely filed an appeal to this court and presents the following issue for our review:

> I. Whether the trial court erred by refusing to issue a peremptory writ of mandamus requiring the Director of the Department of Codes Administration of Nashville and Davison County, Tennessee to issue a certificate of occupancy pursuant to Chapter 16.36.020(A) of the Metropolitan Code.

**Standard of Review**

This case involves the interpretation of the Metropolitan Code, and as such, our review of the trial court's construction of the Code is *de novo* with no presumption of correctness. *Kyle v. Williams*, No. E2002-00091-SC-R09-CV, 2003 Tenn. Lexis 164 (Tenn. 2003) at *5. The findings of fact made by a trial court are given a presumption of correctness that will not be overturned unless the evidence preponderates against those findings. *See* Tenn. R. App. P. 13(d); *see also Bank/First Citizens v. Citizens and Assoc.*, 82 S.W.3d 259, 262 (Tenn. 2002) (citing *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001)).

**Law and Analysis**

This case boils down to the meaning of the word "building" in Metropolitan Code 16.36.020(A) which states:

Upon completion of a building erected in accordance with approved plans, and after the final inspection and upon application therefor, the department of codes administration shall issue a certificate of occupancy stating the nature of the occupancy permitted, the number of persons for each floor when limited by law and the allowable load per square foot for each floor in accordance with the provisions of Sections 2.80.010 through 2.80.110 and Chapters 16.04, 16.08, 16.28, and 16.36 through 16.56.

Since we are to be construing the Metropolitan Code, we first note that we construe ordinances using the same principles we would if construing a statute. *Lion's Head Homeowners' Ass'n v. Metro. Bd. of Zoning Appeals*, 968 S.W.2d 296, 301 (Tenn. Ct. App. 1997). Thus,

[w]hen the language of an ordinance is clear, the courts will enforce the ordinance as written. When, however, the language of an ordinance is ambiguous, the courts will resort to the customary principles of statutory construction. *See Whittemore v. Brentwood Planning Comm'n,* 835 S.W.2d at 15. Accordingly, the reviewing courts will construe a zoning ordinance as a whole and will give its words their natural and ordinary meaning. *See Lions Head Homeowners' Ass'n v. Metropolitan Bd. of Zoning Appeals,* 968 S.W.2d 296, 301 (Tenn. Ct. App. 1997); *Boles v. City of Chattanooga,* 892 S.W.2d 416, 420 (Tenn. Ct. App. 1994).

*421 Corp. v. Metro. Gov't of Nashville and Davidson County*, 36 S.W.3d 469, 475-76 (Tenn. Ct. App. 2000).

The Department correctly points out that there is no Tennessee case law concerning whether a "landscape buffer yard" is included in the definition of a "building." We find that there is a very simple explanation for this lack of authority on this issue: a building is a building and a landscape buffer yard is a landscape buffer yard. The Metropolitan Code makes this clear. Title 17 of the Metropolitan Code, entitled "Zoning," defines both terms. Chapter 17.04.060 defines a building as "any structure that encloses a space used for sheltering any occupancy." This very same Chapter defines a landscape buffer yard as "a required yard located at the perimeter of the lot containing landscaping, berms, walls or fences that shield uses on adjacent properties from those uses occurring on the subject property."

We are dealing, however, specifically with "building" as used in Title 16, Chapter 36, Section 020(A) of the Metropolitan Code which contains no definitions. As stated above, we are to give the words contained in Metropolitan Code 16.36.020(A) their normal and ordinary meaning. Webster's defines a building as "a usually roofed and walled structure built for permanent use (as for a dwelling)." WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 186 (1985). The normal and ordinary meaning of the word "building" found in Webster's is substantially the same as the definition of the word "building" found in other parts of the Metropolitan Code. In addition to Title 17 mentioned above, Title 16, Chapter 24, Section 30 also contains a "Definitions" section. This Chapter defines "building" in exactly the same way as Title 17 with some additional information

following the initial definition. It states that a building is "any structure that encloses a space used for sheltering any occupancy. Each part of a building separated from other parts by a firewall shall be construed as a separate building. The term, building, shall be construed as if followed by the words 'or part thereof.'"

Also, as stated above, we must look at the ordinance in question as a whole. Chapter 16.36.020(A) talks about the completion of a "building" and then requires that the certificate of occupancy for the "building" to state "the nature of the occupancy permitted, the number of persons for each floor when limited by law and the allowable load per square foot for each floor." These requirements are wholly in accord with the definition of a building as "any structure that encloses a space used for sheltering any occupancy" stated above because they make specific references to the inside of a building and not the wider premises. Thus, for the purposes of Metropolitan Code 16.36.020(A), we conclude that a building is a building as defined in the Metropolitan Code and a landscape buffer yard is not.

It is clear from the entire record before us that the Department does not have a problem with the building itself, rather the Department has a problem with the landscaping buffer yard constructed by Moore. At the hearing on the writ of mandamus requested by Moore, the following exchange sums up the entire controversy:

THE COURT: Let me ask counsel for Metro: Does the building comply with the code?

MR. CHAMPNEY: It does, Your Honor.

THE COURT: All right. And when was the building, the final inspection done on the building?

MR. CHAMPNEY: Let me look at my notes. On September 27th of 2001, Your Honor.

THE COURT: And at that time, I take it, the building was - - it was determined that the building met the codes?

MR. CHAMPNEY: That's right.

THE COURT: So the dispute is, and correct me if I'm wrong, the reason that the permanent certificate of occupancy has not be issued is because of the landscaping dispute?

MR. CHAMPNEY: That is correct, Your Honor.

-4-

THE COURT: And the metropolitan government, the codes department takes the position that the entire property must comply with the metropolitan codes regulations before the permit can be issued; is that right?

MR. CHAMPNEY: That is our position, yes, Your Honor.

The lower court, in its written "Conclusions of Law," determined that the landscaping buffer yard is "an integral part of the building as defined in Chapter 16.24.030" and that the Department "could not exercise its duty to issue [Moore] the certificate of occupancy because [Moore] had not completed the building 'in accordance with approved plans.'" The lower court apparently found that the wording in the definition of building found in Chapter 16.24.030 that reads "[t]he term building, shall be construed as if followed by the words 'or part thereof'" allowed the inclusion of the landscape buffer yard. This is also the position that the Department takes in this appeal. We respectfully disagree.

Having found that the landscape buffer yard is not a part of a "building" we turn back to the certificate of occupancy. Metropolitan Code 16.36.020(A) states "[u]pon completion of a building erected in accordance with approved plans, and after the final inspection and upon application therefor, the department of codes administration shall issue a certificate of occupancy." As stated above, the Department's position is that the building had its final inspection on September 27, 2001 and on that date the Department determined that the building "met the codes." In light of this determination, the Code states the Department "shall issue a certificate of occupancy."

Moore requested that the lower court issue a writ of mandamus ordering the Department to issue the certificate of occupancy. A writ of mandamus has been described thus:

> The writ of mandamus is an extraordinary remedy. *Peerless Constr. Co. v. Bass*, 158 Tenn. 518, 522, 14 S.W.2d 732 (1929); *State v. Thompson*, 118 Tenn. 571, 102 S.W. 349 (1907); *State ex rel. Witcher v. Bilbrey*, 878 S.W.2d 567, 570 (Tenn. Ct. App. 1994). Its purpose is to enforce a clearly established legal right, *State v. Irick*, 906 S.W.2d 440, 442 (Tenn. 1995), or to compel a public official to perform his or her legal duties. *State ex rel. Ledbetter v. Duncan*, 702 S.W.2d 163, 165 (Tenn. 1985). Therefore, to obtain the writ of mandamus, the petitioner must show a specific and complete right which is to be enforced. *Winters v. Burford*, 46 Tenn. (6 Cold.) 328, 330-31(1869); *Hayes v. Civil Serv. Comm'n of Metro. Gov't*, 907 S.W.2d 826, 829 (Tenn. Ct. App. 1995).
>
> Mandamus cannot be used to control a public official's judgment or discretion. *State ex rel. Harned v. Meador*, 153 Tenn. 634, 640, 284 S.W. 890, 892 (1926); *Hackett v. Smith County*, 807 S.W.2d 695, 698 (Tenn. Ct. App. 1990). It serves only to control ministerial acts. *Waters v. State*, 583 S.W.2d 756, 763 (Tenn. 1991). Thus,

> the writ cannot be used to compel a public official to perform a discretionary act or to perform a discretionary act in a particular way. *State ex rel. Byram v. City of Brentwood*, 833 S.W.2d 500, 505 (Tenn. Ct. App. 1991). A writ of mandamus is proper only when nothing is left to the public official's judgment. *Tusant v. City of Memphis*, 56 S.W.3d 10, 18 (Tenn. Ct. App. 2001).

*Cotten v. Tennessee Bd. of Paroles*, No. M2001-00875-COA-R3-CV, 2002 Tenn. App. LEXIS 490, at *7-9 (Tenn. Ct. App. July 12, 2002).

Thus, because the Department admits that the building has passed the final inspection and because the Chapter 16.36.020(A) requires that once this requirement is met the certificate "shall" issue, we find that the Department must issue the certificate. We reverse the decision of the court below and remand for the issuance of a writ of mandamus requiring the Department to issue a certificate of occupancy for the Hilton Garden Inn hotel.


Conclusion

For the foregoing reasons, we reverse the judgment of the court below and remand for proceedings consistent with this opinion. Costs are judged against the Department of Codes Administration of the Metropolitan Government of Nashville and Davidson County, Tennessee for which execution may issue, if necessary.

 

_____
ALAN E. HIGHERS, JUDGE