IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 13, 2011 Session

# METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, TENNESSEE v. RICHARD A. DEMONBREUN

Appeal from the Circuit Court for Davidson County
No. 09C851, 09C852     Thomas W. Brothers, Judge

No. M2010-02060-COA-R3-CV - Filed June 28, 2011

Property owner seeks review of the trial court's decision that two citations were properly issued against him because he did not have a permit for hosting historic home events on his property as required by the Metropolitan Government.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Larry Lamont Crain, Brentwood, Tennessee, for the appellant, Richard A. Demonbreun. Richard A. Demonbreun argued on appeal.

Andrew David McClanahan, James William Jefferson Farrar, and Raleigh Alexander Dickerson, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville and Davidson County, Tennessee.

**OPINION**

BACKGROUND

In 2008, Mr. Richard Demonbreun held a bed and breakfast permit for property located at 746 Benton Avenue in Nashville.  He sought a "historic home event" permit, but the Board of Zoning Appeals ("BZA") denied his application on April 17, 2008.[1]  According

---

[1]The hearing was held April 17, 2008, and Mr. Demonbreun's application for a special exception was denied because it failed to receive the necessary number of affirmative votes for approval.  The order

(continued...)

to representations made by both parties during oral argument, Mr. Demonbreun did not appeal the BZA's denial. On May 19, 2008, Mr. Demonbreun hosted a graduation gathering attended by 15 to 20 people, and on August 4 and 5, 2008, a local advertising agency held a corporate meeting at the bed and breakfast. As a result of these two occurrences, the Metropolitan Codes Department issued two citations to Mr. Demonbreun for violating Metro Code § 17.40.580.[2] The general sessions court found Mr. Demonbreun in violation of Metro Code § 17.40.580 and assessed a penalty of $50 plus court costs for each violation. He appealed the decision as to both citations to the circuit court, which consolidated the appeals. A trial was held May 19, 2010. The court found that "[a]t the time of the Citations at issue in the case, Mr. Demonbreun did not have a permit that allowed him to host home events," and ordered him to pay the fines assessed by the general sessions court and all court costs.

STANDARD OF REVIEW

This court reviews the trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. Civ. P. 13(d). The trial court's conclusions of law receive no such presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

ANALYSIS

Metro Code § 17.04.060B states that, "'Historic bed and breakfast homestay' means three or fewer furnished guest rooms for pay within a private, owner-occupied historically significant structure. Meals may be provided to overnight guests. The maximum stay for any guest shall be fourteen consecutive days." There is no dispute that Mr. Demonbreun operates his bed and breakfast establishment pursuant to a historic bed and breakfast homestay permit. The dispute between the parties is about what the permit allows Mr. Demonbreun to do. He maintains that the activities for which he was cited fall within the ambit of his bed and breakfast permit. Metro maintains that Mr. Demonbreun should have obtained a historic home event permit before engaging in the activities for which he was cited.[3] Under the

_____

[1](...continued)
was actually entered on April 18, 2008.

[2]Metro Code § 17.40.580 requires a certificate of compliance before a use requiring a permit can be undertaken. The citations were issued because Mr. Demonbreun did not have a certificate of compliance for the holding of historic home events.

[3]Technically, as noted in footnote 2, infra, the citations were issued because Mr. Demonbreun did not have a certificate of compliance for the holding of historic home events. Of course, he could not have
(continued...)

-2-

Metro Code, a "'Historic home event' means the hosting of events such as, but not limited to, weddings or parties for pay in a private home which has been judged to be historically significant by the historical commission." Metro Code § 17.04.060B.

We begin by examining the requirements of the Metro Code. We apply the same rules of construction to ordinances as we do to statutes. *State ex rel. Moore & Assocs., Inc. v. Cobb*, 124 S.W.3d 131, 133 (Tenn. Ct. App. 2003). When construing statutes, courts are to give effect to the legislative intent. *Worrall v. Kroger Co.*, 545 S.W.2d 736, 738 (Tenn. 1977). "This legislative intent or purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, when read in the context of the entire statute, without any forced or subtle construction to limit or extend the import of the language." *Id.* Therefore, the intent, as derived from the ordinary meaning of the language used in the ordinance, controls.

Metro Code § 17.04.060 is admittedly sparse about what a bed and breakfast located in a historic home can do. It indicates that Mr. Demonbreun can provide up to three guest rooms for pay and provide meals to his overnight guests. This language implicates a well-known canon of statutory construction, *expressio unius est exclusio alterius*, which means "the expression of one thing is the exclusion of another (of the same kind)." *D & E Constr. Co., Inc. v. Robert J. Denley Co., Inc.*, 38 S.W.3d 513, 519 (Tenn. 2001) (quoting *City of Knoxville v. Brown*, 260 S.W.2d 264, 268 (Tenn. 1953)). Thus, the provision of food is limited to meals. We agree with the Tennessee Supreme Court's observation, albeit in a slightly different context, "that serving meals means something more than peanuts[,] popcorn, potato chips, and an occasional sandwich." *Baird v. State*, 167 S.W.2d 332, 334 (Tenn. 1943). The ordinance additionally limits the provision of meals to overnight guests.

Permission to hold historic home events allows the hosting of "events such as, but not limited to, weddings or parties for pay." Metro Code § 17.04.060B. The words "such as" indicate that the items following, weddings and parties, are provided as examples of events which may be hosted. The words "but not limited to" reinforce the notion that weddings and parties are not the only events that may be held. The purposes of the gatherings and the activities associated with the gatherings are not expressly limited.

The facts concerning the May 19, 2008 activity at Mr. Demonbreun's property are basically uncontroverted. Approximately 15 to 20 people gathered there prior to a high

[3](...continued)
the certificate of compliance if he did not have a permit for holding historic home events in the first place. References by all parties and this court to a historic home events permit refer to the granting of a special exception for such events by the BZA.

school graduation. Mr. Demonbreun claims that the property was used as a "rendevous point." He charged a rental fee for his three guest rooms, but the trial court found that there is no evidence that anyone spent the night there.[4] He provided snacks and beverages and was reimbursed for their cost. Adults and children were observed in the yard. Some of them held plates in their hands. One woman was observed holding a graduation cap and gown. Mr. Demonbreun also provided valet parking service.

Mr. Demonbreun characterizes this gathering as merely people visiting with his guests. He views the provision of snacks as a part of the hospitality business in which his bed and breakfast is engaged. We respectfully disagree. While there is no requirement that his room-renters actually spend the night, one cannot use the room fees as a substitute for an event charge. What occurred on May 19, 2008, was beyond the scope of a bed and breakfast permit. Food was served to people who were not overnight guests. While nothing prevents overnight guests from having visitors, having too many visitors makes the activity into an event. The activity of May 19, 2008, fell squarely within the definition of a historic home event under the Metro Code and, therefore, required BZA permission to hold historic home events and a certificate of compliance.

The facts leading to the second citation are not in dispute. On August 4 and 5, 2008, a Nashville company held a corporate meeting at Mr. Demonbreun's property. Approximately 12 employees attended the day-and-a-half meeting. Mr. Demonbreun rented all three rooms but does not recall anyone staying there as overnight guests. Testimony indicated that all the cars of the attendees left the evening of the 4th and returned the morning of the 5th. Mr. Demonbreun provided food and drinks for an additional charge.

Even if some attendees stayed at the bed and breakfast overnight on August 4, what occurred was not a social visit by friends, family or acquaintances of Mr. Demonbreun's overnight guests. The property's visitors on August 4 and 5, 2008, were there for a corporate meeting. Such activity is beyond the scope of a bed and breakfast and satisfies the definition of a historic home event. Therefore, BZA permission to hold historic home events and a certificate of compliance were required.

In his brief, Mr. Demonbreun maintains that:

The [bed and breakfast] permit issued by the Board on October 18, 1995, contains no conditions ("none") whatsoever on the venue for business activity,

---

[4]At oral argument, Mr. Demonbreun stated that he remembered testifying that people spent two nights there. At the May 19, 2010 hearing, when asked if anyone stayed in the rooms, Mr. Demonbreun stated, "I don't know if they did or not. I don't think they did, but I don't know."

yet the Metropolitan Government now seeks to unconstitutionally limit the activities being engaged in by the defendant even though they have no impact whatsoever on the historic neighborhood where it is located and are customary and reasonable in the bed and breakfast/hospitality industry.

The October 1995 permit is for a bed and breakfast. The ordinance defines the scope of activities for such establishments and, as previously discussed, the activities for which Mr. Demonbreun was cited exceed the scope of his bed and breakfast permit.

Mr. Demonbreun also claims that the Metro ordinance is so ambiguous and vague that one must guess at its meaning. Suffice it to say that, while more specificity might be a benefit, we do not find the ordinance either ambiguous or vague.

Finally, Mr. Demonbreun's oral argument and brief make references to the "illegal" denial of his application for a historic home event permit in April and October, 2008. He never appealed the April 2008 denial, so that denial is final. Thus, he had no historic event permit at the time of the May and August 2008 activities that are the subject of this appeal. The subsequent application for and denial of an application is irrelevant to this appeal.[5]

CONCLUSION

The decision of the trial court is affirmed. Costs of appeal are assessed against the appellant, Mr. Richard A. Demonbreun, for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE

---

[5]We note, however, that this court recently upheld the trial court's decision to reverse the BZA's denial of Mr. Demonbreun's October 2008 application to hold historic home events. *See Demonbreun v. Metro. Bd. of Zoning Appeals*, M2009-00557-COA-R3-CV, 2011 WL 2416722 (Tenn. Ct. App. June 10, 2011). For the reason stated above, the prior decision is irrelevant to this matter. Therefore, Mr. Demonbreun's motion to consider the post-judgment fact of the prior opinion is denied.