STATE OF TENNESSEE *ex rel. v.* EDGAR H. SMITH, *et al.*

(*Knoxville.* September Term, 1928.)

Opinion filed December 8, 1928.

J. H. S. MORRISON and J. H. UNDERWOOD, for complainants, appellee.

ANDERSON & WORD, E. H. POWERS, H. G. MURRAY, AGEE & GUY and H. B. BROWN, for defendants, appellant.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is an ouster proceeding brought on the relation of ten citizens of Campbell County against Smith, the county superintendent of public instruction, Baird, the chairman of the county board of education, and Pickle, Reynolds and Dossett members of the county board of education. By the Chancellor's decree Smith, the superintendent of public instruction, and Baird, the chairman of the county board, were removed from office, and the bill was dismissed as to Pickle, Reynolds and Dossett, members of the board.

Smith took no appeal from the Chancellor's decree. Baird appealed. The record was filed for writ of error for the relators, seeking to reverse the decree of the Chancellor in dismissing their bill as to Pickle, Reynolds and Dossett.

The hearing was on oral proof before the Chancellor and neither side took a bill of exceptions. The case is submitted to us on the Chancellor's written finding of facts.

As to Baird, chairman of the county board of education, the Chancellor found that said chairman failed to countersign thousands of warrants authorized by the

board of education as the law required him to do, but instead furnished to a clerk or secretary, the board had employed, a rubber stamp with which to sign the chairman's name to these warrants and thereby failed to make any check upon the issuance of warrants by the county superintendent.

(1) Chapter 115 of the Acts of 1925, section 6, paragraph 7, page 329, makes it the duty of the county board of education to order warrants drawn on the county trustee on account of the elementary and high school funds, respectively.

In the same section of said Act, paragraph 5, page 325, it is made the duty of the county superintendent to issue within ten days all warrants authorized by the county board of education on the county trustee for public school funds.

(2) Section 6 of said Act, paragraph 4, page 331, as to the duties of the chairman of the county board of education, requires him:

"To countersign all warrants authorized by the county board of education and issued by the county superintendent upon the county trustee for all expenditures of the elementary and high school fund."

(3) The Ouster Act provides, among other things, for the removal of any public official "who shall knowingly or wilfully neglect to perform any duty enjoined upon said officer by any of the laws of the State of Tennessee." Section 1, Chapter 11, Acts of 1915.

(4) This action of the chairman of the county board in procuring a rubber stamp bearing a facsimile of his signature and authorizing the clerk of the board to affix this stamp to county warrants seems to us a conscious and wilful neglect of an important duty enjoined by the

section just above quoted. As a check upon a reckless or dishonest county superintendent in the issuance of warrants, the statute required the countersignature of the chairman of the board of education. The chairman was expected to approve and authenticate each one and thus protect the schools. Such a duty cannot be delegated to a mere clerk. For a trusted fiscal officer to knowingly and wilfully shirk such a duty constitutes abundant ground for his removal from office. The Chancellor correctly so held.

Passing to the writ of error which brings before us the charges against Pickle, Reynolds and Dossett, members of the school board, the Chancellor found:

"With respect to the defendants Reynolds, Dossett and Pickle, I find that the record fails to show that they have done anything for which they should be removed from office. It is not even shown that the defendant Pickle was a member of the board at the time the wrongs complained of occurred. It is not shown what action the defendants Reynolds and Dossett took in reference to any of the transactions of the board, so far as this record is concerned. It is not shown that they participated one way or the other in these wrongful expenditures, the result will be that the petition against Reynolds, Dossett and Pickle will be dismissed.

"The petition will be sustained as against the defendants Smith and Baird and decree will be drawn removing each from office."

With no showing that he was a member of the board of education "at the time the wrongs complained of occurred," of course the bill was properly dismissed as to Pickle.

*(5)* Each county board of education is composed of seven members and section 6 of Chapter 115 of the Acts of 1925, paragraph 6, page 332, provides:

"Any member of the county board of education who shall vote to make debts beyond the legitimate income provided in the school budget for any school year or in any way misappropriate or misuse school funds shall be guilty of a misdemeanor, punishable by a fine not less than fifty dollars ($50) nor more than two hundred dollars ($200) and shall forfeit his office."

One charge against said board members is that the budget was exceeded in violation of the section of the statute just set out. Under the Chancellor's finding, it seems there was no proof as to what action Reynolds and Dossett took in respect to this matter—how they voted. There being no evidence that they participated nor approved in any way of the alleged improper expenditures in excess of the budget, this charge as to them fails.

*(6)* Another charge against the members of the board is predicated upon a violation of a paragraph of section 6 on page 332 of Chapter 115 of the Acts of 1925, as follows:

"The compensation of members of said county board of education shall be fixed by the quarterly county court for their services when attending regular and special meetings of the board and discharging the duties imposed by this Act; . . . provided, further, that no member of any board shall receive more than $4 per day for his services."

As to this matter the Chancellor said: "With reference to the compensation of the members of the board of education the statute provides, that their compensation shall be fixed by the quarterly county court for their

services in attending regular and special meetings of the board and discharging the duties imposed by this Act. It is further provided, that no member of the board shall receive more than $4 per day for his services. The relators insist that the compensation is limited to the actual time spent while attending regular and special meetings of the board, but I am inclined to the opinion that the compensation is not limited to such work, as the statute provides that they be compensated for these meetings and discharging the duties imposed by the Act. By subsection 9 of section 6, page 329, under the head of duties of the board of education, it is made the duty of the board of education to visit the schools whenever in the judgment of the board such visits are necessary. The Act further provides that the chairman of the board of education, in conjunction with the county superintendent shall compose an executive committee, and certain very responsible duties are assigned to the committee under that. Construing the Act as a whole, I am of the opinion that the board of education could lawfully receive compensation for other services other than attending the regular and special meeting of the board. It will be observed that the record wholly fails to show that any action was taken whatever by the county court fixing the amount of compensation per day for the members of the board. The record shows a number of regular and special meetings held by the board for the last two years, but it does not show the amount definitely of the work of the members of this board in performing the other duties imposed upon it, and for this reason, I am of the opinion that while the board undertook to pay itself an annual salary for its services, it violated the letter of the law, I do not find they received money they

would not have been entitled to if they had been paid a *per diem.*"

Since the evidence shows no disparity between the lump sum drawn as salary by members of the board and the aggregate of lawful *per diems* that might have been drawn by them, there is no indication that there was a disposition on the part of the members of the board to overpay themselves or to loot the school fund. We, therefore, agree with the Chancellor that the course taken by them was an inadvertence rather than a conscious or wilful violation of law subjecting them to ouster.

Upon the whole case we think the Chancellor reached the right result and his decree will be in all respects affirmed. The costs of this court will be taxed one-half to Baird and one-half to the relators. The costs below will remain as taxed by the Chancellor.