STATE of Tennessee, Upon Relation of James D. ESTEP, III, County Attorney for Claiborne County, Tennessee, Plaintiff/Appellee,

v.

Dennis L. PETERS, Defendant/Appellant.

Supreme Court of Tennessee, at Knoxville.

Aug. 5, 1991.

Linda J. Hamilton Mowles, John M. Neal, Lewis, King, Krieg & Waldrop, George W. Morton, Morton & Morton, Knoxville, Thomas J. Garland, Jr., Milligan & Coleman, Greeneville, for defendant-appellant.

Michael B. Kinnard, P. Edward Pratt, Baker, Worthington, Crossley, Stansberry & Woolf, Knoxville, for plaintiff-appellee.

## OPINION

ANDERSON, Justice.

In this direct appeal, we are asked to decide whether a county school superintendent, who knowingly and willfully misapplied public funds without an intent to benefit personally from his actions, may be ousted for misconduct under Tenn.Code Ann. § 8–47–101. The Chancellor's judgment ousted Dennis Peters from his position as superintendent of schools for Claiborne County for knowingly or willfully misconducting himself in office. The ouster judgment was based, in part, upon findings of fact made by a jury related to actions taken by the defendant in connection with an operating deficit incurred by the Claiborne County school system for the 1988–89 fiscal year. Some of these actions violated federal and state statutes. For the reasons set out below, we affirm the Chancellor's judgment of ouster.

## FACTUAL BACKGROUND

Tennessee statutory law requires the superintendent of a school system to prepare an annual budget for the school system and to submit the budget to the appropriate legislative body (in this case, the Claiborne County Commission).[1] The largest single source of revenue for a Tennessee public school system consists of funds provided by the state government pursuant to a program called the Tennessee Foundation Program. The amount of money a county school system receives for a given year under the Tennessee Foundation Program depends on the system's average daily attendance for the first three months of that school year. The Claiborne County school system's budget for the 1988–89 fiscal year that was prepared by the defendant and

approved by the Claiborne County Commission was based on the defendant's estimate that the average daily attendance for the year would be 4,933 students. On or before December 15, 1988, the defendant submitted to the appropriate state agency a report showing that the actual average daily attendance for the Claiborne County school system for the first three months of the 1988–89 school year was 4,592 students (341 students fewer than he had estimated). A primary cause of the operating deficit was this overestimate by the defendant of the average daily attendance of students in the Claiborne County school system for the 1988–89 fiscal year.

The defendant did not, at any time during the 1988–89 school year, report to the Claiborne County Commission or to the Claiborne County Board of Education the fact that the school system would have a financial shortfall because of his overestimate of attendance.

To cope with the lack of funds, the defendant caused money that had been provided by the federal government to the Claiborne County school system for certain designated purposes to be transferred to the school system's general purpose fund, out of which salaries and other operating expenses are paid. He also directed that funds representing bond proceeds for capital improvements be transferred to the school system's general purpose fund. In addition, the defendant diverted to the school system's general fund contributions that were intended to be placed in the Claiborne County Board of Education Employee Benefit Trust, a trust to provide certain medical benefits for employees and former employees of the school system, of which Peters was one of the trustees; these trust contributions were received

---

1. Tennessee Code Annotated, § 49–2–301(f)(23) provides:
   It is the duty of the board of education to assign to its superintendent the duty to:
   . . . .
   Prepare, annually, a budget for the schools in his school system, to submit the same to the board of education for its approval and to present it to the county or other appropriate local legislative body for adoption as provided for by charter or private legislative act.

   (A) Such budget shall set forth in itemized form the amount necessary to operate the schools for the scholastic year beginning on July 1, following, or on such date as provided for by charter or private legislative act.
   (B) Any change in the expenditure of money as provided for by the budget shall first be ratified by the local board of education and the appropriate local legislative body.

from the state government, from the federal government, from employees, and from former employees.

Based on the defendant's foregoing activities, the jury affirmatively responded to each of the following questions that were submitted to them at the conclusion of the trial:

*1.* Did defendant ... knowingly or willingly fail to deposit money received from the state of Tennessee for teachers' insurance into the Employee Benefit Trust Account?

*2.* Did defendant ... knowingly or willingly fail to deposit Claiborne County's contribution to the Employee Benefit Trust Account?

*3.* Did defendant ... knowingly or willingly apply money received from the federal government under Hot Lunch and/or Hot Breakfast Programs to purposes other than those programs?

*4.* Did defendant ... knowingly or willingly apply money received from the federal government under programs for the special educational needs of educationally deprived children to purposes other than those programs?

*5.* Did defendant ... knowingly or willfully apply bond proceeds or money borrowed for the renovations or improvements of county schools for other purposes?

*6.* Did defendant ... knowingly or willfully fail to make required written reports on the financial condition of the school system to the Claiborne County Commission?

The above findings by the jury are not in dispute and are in accordance with the defendant's admissions.

The defendant's misapplications of federally-provided funds violated federal statutes. He misapplied money that was provided to the Claiborne County school system pursuant to the School Lunch Program, authorized by 42 U.S.C. §§ 1751, *et seq.;* the Child Nutrition Program, authorized by 42 U.S.C. §§ 1771, *et seq.;* and the Financial Assistance to Meet Special Education Needs for Children Program, authorized by 20 U.S.C. §§ 2701, *et seq.* Each of these statutory programs contains provisions mandating that money provided to local school systems be spent only for designated purposes (42 U.S.C. § 1757, 42 U.S.C. § 1773(c), and 20 U.S.C. § 2721, respectively).

It appears that the defendant's misapplication of federal funds could have subjected him to federal prosecution pursuant to 18 U.S.C. § 666(a), which provides, in pertinent part, as follows:

Whoever ... being an agent of an organization, or of a State, local or Indian tribal government, or any agency thereof ... knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that is valued at $5,000.00 or more, and is owned by, or is under the care, custody, or control of such organization, government, or agency ... shall be fined under this title, imprisoned not more than 10 years, or both.

Some of the money that was misapplied by the defendant represented the proceeds of bonds issued by Claiborne County pursuant to Tenn.Code Ann. § 49–3–1001, *et seq.* Tenn.Code Ann. § 49–3–1004(a) limits the permitted uses of such bond proceeds, providing, in pertinent part, as follows:

The proceeds from the sale of school bonds issued under section 49–3–1002 constitute a special fund to be known as the "special school fund" ... which shall be kept by the trustees of such county and the treasurer of the city schools separate and apart from all other funds and shall be *applied exclusively* to purchase property for school purposes, to purchase sites for school buildings, to erect or repair school buildings, to furnish and equip school buildings, and to refund, call or make principal and interest payments on bonds or other obligations previously issued for the same purposes, and *to be used for no other purposes* by the county board of education of the county, the city board of education, or the governing board of the city.

(Emphasis added.)

In failing to notify the Claiborne County Commission or the Claiborne County Board

of Education of the revenue shortfall occasioned by the overestimate of school attendance, the defendant failed to comply with Tenn.Code Ann. § 49-2-301(f)(21), which makes it the duty of a school superintendent to:

> Report to the local legislative body and the commissioner of education, whenever it shall appear to him that any portion of the school fund has been, or is in danger of being, misappropriated or in any way illegally disposed of or not collected.

As indicated, there is no dispute that the defendant "knowingly or willingly" misapplied funds and failed to report the school system's financial problems to the appropriate legislative body.

## ANALYSIS

The issue to be resolved in connection with these admitted actions is whether they constitute "misconduct" for purposes of Tenn.Code Ann. § 8-47-101. The defendant argues that his actions did not constitute such "misconduct," because he did not, nor did he intend to, benefit personally from such actions. He argues that his "good faith" provides a defense to this ouster proceeding pursuant to Tenn.Code Ann. § 8-47-101.

Section 8-47-101 of Tennessee Code Annotated provides as follows:

> Every person holding any office of trust or profit, under and by virtue of any of the laws of the state, either state, county, or municipal, except such officers as are by the constitution removable only and exclusively by methods other than those provided in this chapter, *who shall knowingly or willingly misconduct himself in office,* or who shall knowingly or willfully neglect to perform any duty enjoined on such officer by any of the laws of the state, or who shall in any public place be in a state of intoxication produced by strong drink voluntarily taken, or who shall engage in any form of gambling, or who shall commit any act constituting a violation of any penal statute involving moral turpitude, shall forfeit his office and shall be ousted from

such office in the manner hereinafter provided.

(Emphasis added.)

In considering earlier ouster actions under the 1915 statute set out above, we have stated that the "good faith" of a defendant can be a factor to be considered in determining whether the defendant's actions constitute "misconduct" for purposes of the statute. In *State ex rel. v. Perkinson,* 159 Tenn. 442, 19 S.W.2d 254 (1928), an attempt was made to oust a city commissioner of Lawrenceburg because he had entered into a contract with the city in which he had a personal interest; this was in violation of a statute. He had acted as agent for the city in the purchase of land in one instance, and in another had sold the city $18.02 worth of lumber for the emergency repair of a bridge. Neither transaction was made at a profit. We determined that the defendant should not be ousted, stating as follows:

> But where the act is invoked as a basis for ouster under chapter 11, Acts of 1915 [currently T.C.A. § 8-47-101], a distinction must be drawn between the acts done in good faith but unenforceable because the statute makes them so, and acts of willful misconduct, as where a public officer corruptly and fraudulently abuses his powers in making the contract.... But public officials acting in good faith, who, through ignorance, error or oversight, run counter to a charter provision or some statute law, did not subject themselves to indictment and removal from office at common law, and under similar circumstances could not be removed from office under the Ouster Law.

*Id.,* 159 Tenn. at 445, 19 S.W.2d at 255.

Our decision in *State ex rel. v. Perkinson* has been followed in subsequent decisions, including *Vandergriff v. State ex rel. Davis,* 185 Tenn. 386, 206 S.W.2d 395 (1947). In *Davis,* an effort was made to oust the sheriff of Anderson County. The sheriff had conducted several raids of nightclubs in which he had seized illegal liquor. A statute required him to report such seizures within five days. He admit-

ted he had not complied with this statute, and he testified that he had not been aware of its existence. We reversed a trial court ouster judgment, saying:

Where a sheriff has made an honest and reasonably intelligent effort to do his duty, he will not be removed from office by the courts, though his efforts may not have been wholly successful, for his right to hold and continue in office depends upon the good faith of his efforts rather than upon the degree of his success. . . .

The Ouster statute is a salutary one, but those administering it should guard against its overencroachment. Shreds of human imperfections gathered together to mold charges of official dereliction should be carefully scanned before a reputable officer is removed from office. These derelictions should amount to knowing misconduct or failure on the part of the officer if his office is to be forfeited; mere mistakes in judgment will not suffice.

*Id.*, 206 S.W.2d at 397.

■ Even though, as is indicated by the foregoing cases, the "good faith" of a defendant can be a factor to be considered in determining whether the defendant's actions constitute "misconduct" for purposes of Tenn.Code Ann. § 8–47–101, an intent or desire to benefit personally from an activity is not an essential element of "misconduct" for purposes of the statute. In *Edwards v. State ex rel. Kimbrough*, 194 Tenn. 64, 250 S.W.2d 19 (1952), an ouster proceeding was brought against the sheriff of Polk County. An unlawful assembly had prevented the Quarterly Court of Polk County from meeting on four successive occasions. The evidence showed that the sheriff had knowingly and willfully violated a statute by neglecting "to suppress affrays, riots, routs, unlawful assemblies, insurrections, or other breaches of the peace." We affirmed a judgment of ouster, even though there was no indication that the sheriff's action was motivated by a desire for personal gain.

Our decision in *Jordan v. State ex rel. Williams*, 217 Tenn. 307, 397 S.W.2d 383 (1965), contains conflicting language regarding whether the good faith of a defendant should be considered in determining whether there has been "misconduct" for purposes of Tenn.Code Ann. § 8–47–101. In *Jordan*, we approved the ouster from office of a Shelby County commissioner for utilizing for his own benefit equipment and supplies of the Shelby County Penal Farm and labor of its inmates.

■ Our review of earlier ouster cases reinforces our belief that, in determining whether a public official has "knowingly or willfully misconduct[ed] himself in office" for purposes of Tenn.Code Ann. § 8–47–101, good faith can be a factor which should be considered. We therefore reaffirm this Court's holdings in *State ex rel. v. Perkinson, supra,* and *Vandergriff v. State ex rel. Davis, supra.* However, we find that the admitted conduct of the defendant, Dennis L. Peters, which the jury found to be "knowing or willful," constituted "misconduct" for purposes of the statute, without regard to the defendant's motives.

Here, the defendant diverted federal funds, capital funds, and trust funds restricted by law to specific uses and then spent the funds for general school operating purposes, violating state and federal statutes in the process. These actions were taken because of the school system's budget deficit that ultimately grew to $961,000.00, which the defendant had failed to report to the County Commission and the school board for an entire school year. The defendant argues that the forbidden use of the funds was "temporary," that the diverted funds were ultimately repaid, and that extraordinary means were required. These arguments miss the point. In failing to report the financial emergency, the defendant circumvented the school board and the County Commission, the representative governmental institutions whose duty it was to consider the budget crisis and effect a remedy. Instead, the defendant substituted illegal "Robin Hood" diversions of funds, based on the apparent rationale that the ends justified the means. It was the

initial diversions which violated the statutes in question.

In view of the facts of this case, we find no merit in the issues the defendant raises on this appeal regarding his good faith (i.e. that the jury should have been instructed to take into account his good faith and that questions concerning his good faith should have been submitted to the jury).

## OTHER ERRORS

■ The defendant insists that the Chancellor committed other errors which affected the outcome of the trial. First, the defendant contends that the Chancellor erred in excluding evidence that the ouster case was politically motivated and that other public officials in Claiborne County had committed acts of misconduct similar to those committed by the defendant. Such evidence is irrelevant for purposes of assessing the application of Tenn.Code Ann. § 8–47–101 to the defendant. We conclude the Chancellor acted properly in excluding the evidence.

■ Second, the defendant contends that the Chancellor erred in permitting James D. Estep, III, the Claiborne County attorney, to act as the prosecuting plaintiff in this case when he was simultaneously representing the defendant in other litigation. The participation of Estep in this litigation amounted to little, if any, more than the use of his title (county attorney), as is appropriate under Tenn.Code Ann. §§ 8–47–102 and 8–47–110. Moreover, as was found by the Chancellor, there is no evidence that the defendant was in any way prejudiced by Estep's participation in this litigation.

■ Finally, we find no merit in the defendant's objection to the Chancellor's action excluding from the jury panel persons who were employees of the Claiborne County school system and members of the immediate families of such employees. This exclusion was appropriate in an effort to obtain an unbiased jury, and there is no evidence that the defendant was in any manner prejudiced by the jury selection process.

Accordingly, we conclude that the Chancellor's judgment of ouster based on knowing or willful misconduct under Tenn.Code Ann. § 8–47–101 is fully supported by the findings of the jury that the defendant knowingly or willingly misapplied public funds and failed to make required financial reports to the Claiborne County Commission. Having so found, we pretermit the issues raised regarding civil rights litigation against the defendant in Federal District Court.

The judgment of the Chancery Court is affirmed, and this cause is remanded. Costs of this appeal are taxed to the defendant.

REID, C.J., and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.