# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 7, 2007 Session

## STATE EX REL. JOHN W. CARNEY, JR. v. DANNY J. CROSBY

### Appeal from the Chancery Court for Robertson County
### No. 19286     L. M. McMillan, Jr., Chancellor

---

### No. M2006–02777-COA-R3-CV - Filed January 17, 2008

---

The plaintiff appeals the decision of the trial court to not issue a writ of ouster against the mayor of Coopertown. The issue on appeal is whether the trial court correctly concluded that the plaintiff had failed to prove by clear and convincing evidence that the mayor knowingly or willfully committed misconduct that would constitute grounds for removal from office under the ouster statute.[1] The mayor also raises the issue on appeal of whether the trial court erred in denying the mayor's request for attorney fees. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J., and JEFFREY F. STEWART, SP. J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; and William R. Lundy, Jr., Assistant Attorney General, for the appellant, State of Tennessee.

W. Timothy Harvey and Steven J. Christopher, Clarksville, Tennessee, for the appellee, Danny J. Crosby.

John B. Holt, Springfield, Tennessee, for the Amicus Curiae, City of Coopertown.

### OPINION

Following a series of crude, boorish remarks by Danny J. Crosby, Mayor of the City of Coopertown, Tennessee, that received substantial public attention and were perceived by a significant percentage of the citizenry of Coopertown as an embarrassment to the community and official misconduct, and other actions by Mayor Crosby that were perceived as attempts to intimidate those opposed to the Mayor, a group of citizens circulated petitions seeking to oust Crosby from office. As a consequence of the significant number of citizens of Coopertown who signed the ouster petitions, District Attorney General John Carney, Jr. (the "plaintiff") filed a Petition in the Chancery

---

[1]Tenn. Code Ann. § 8-47-101.

Court for Robertson County for an order of suspension from office and for a writ of ouster against Mayor Crosby.

Among the numerous complaints of misconduct set forth in the Petition were allegations the Mayor was profiling and targeting soldiers of the United States Armed Services and Hispanics for the issuance of traffic citations; allegations of attempts to intimidate those who signed the ouster petition; and allegations the Mayor attempted to intimidate a city Alderman, who was a political adversary, by requesting others to post scandalous information about the Alderman on the internet.

The petition was filed on June 27, 2006. A temporary suspension hearing was held a month later. At the conclusion of the hearing the trial court temporarily suspended Crosby from office pending a final hearing. In November of 2006, the trial court conducted a bench trial and considered the testimony of numerous witnesses regarding fourteen allegations[2] against Crosby. At the conclusion of the three-day trial, the trial court made numerous and extensive findings of fact and conclusions of law. The more relevant of these are the following:

    (2)    With regard to the allegation of unlawful profiling of soldiers of the United States Armed Services, the court finds that the defendant did actually encourage police officers of Coopertown, Tennessee to "ticket soldier boys," but the court further finds that there was no evidence upon which this court could conclude that soldiers were ticketed more frequently than other classes of individuals, or that soldiers were ticketed in circumstances in which they were not actually traveling at speeds in excess of ten miles an hour over the posted speed limit through the city limits of Coopertown, Tennessee.

    (3)    With regard to the claim of unlawful racial profiling of Hispanic individuals, the court finds that the defendant did actually encourage police officers of Coopertown, Tennessee to issue multiple citations to Hispanic individuals due to the likelihood that these persons would not contest the citations in court, but there was no evidence upon which this court could conclude by a clear and convincing standard that Hispanic individuals were stopped for suspected traffic offenses because of their race, or that Hispanic individuals were given traffic violations for offenses they did not commit.

. . . .

    (7)    With regard to the allegation that the defendant instructed Coopertown police officers to cite and/or arrest inspectors from the Department of Labor, the court finds that the defendant did actually instruct Coopertown police officers as alleged, but that no Department of Labor investigator was cited and/or arrested for doing his or her job within the city limits of Coopertown, Tennessee.

---

[2]Although the plaintiff's original complaint listed dozens of instances of misconduct, only 14 allegations were ultimately considered at trial.

(8)     With regard to the allegations of intimidation associated with gathering signatures on the ouster petition, the court finds that Mr. Crosby did threaten to sue the individuals who signed the petition. The court further finds that the defendant instructed Coopertown Police Officers to cite and/or arrest the individuals collecting signatures in the event their activities were blocking city streets, or otherwise posing an unreasonable risk of harm for the motoring public.

. . . .

(14)    With regard to the allegation that the defendant instructed a Coopertown police officer to post scandalous information regarding a city Alderman and a political adversary on the internet, the court finds that the defendant did in fact request this act to be accomplished by a city police officer, but that the city police officer did not post such information as result of the defendant's encouragement.

In addition to making the foregoing findings, the trial court accurately characterized conduct attributable to Crosby as "bigotry, sexism or utter foolishness." The foregoing findings not withstanding, the trial court ruled that the plaintiff had failed to prove by "clear and convincing evidence" that Crosby "knowingly or willfully" committed the type of misconduct essential to establish the requisite statutory grounds to remove a public official from office. The trial court went on to state that its ruling would have been different had there been proof that someone was victimized by Crosby's statements or that the constitutional rights of a named individual had been violated.

Had individuals been the *victims of insidious discrimination* caused at the direction of the defendant; had *fundamental constitutional rights of others been violated* at the knowing or willful direction of the defendant; or, had *evidence been fabricated to support an unlawful arrest* at the insistence of the defendant, the decision in this case would be very, very different. (emphasis added).

As a consequence of the foregoing ruling, the trial court dismissed the petition, reinstated Crosby as mayor of the City of Coopertown, and awarded Crosby his discretionary costs. The trial court, however, denied Crosby's request for an award of attorney fees. This appeal followed.

## STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is *de novo* and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581,

596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness and we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). We also give great weight to a trial court's determinations of credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). Issues of law are reviewed *de novo* with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

## OUSTER OF PUBLIC OFFICIAL

Public officials occupying offices of trust may be removed from office pursuant to the Ouster Law, Tenn. Code Ann. § 8-47-101, *et seq.*, pursuant to criteria and a framework established by the General Assembly years ago. That framework, however, provides a very high threshold for the removal of an official from a public office. For example, as the Attorney General noted in an opinion, "an indictment is not a ground for removal under the Ouster Law." Op. Tenn. Atty. Gen. 79-073 (March 22, 1979). [footnote omitted]. However, "[m]isconduct that would sustain an indictment under the common law would support a proceeding under the Ouster Law." *State v. Ward*, 43 S.W.2d 217, 219 (Tenn. 1931).

If, as is the case here, a district attorney receives a complaint with notice in writing that an officer has committed an act, omission or offense set out in Tenn. Code Ann. § 8-47-101, an investigation must be commenced by the district attorney, and if that investigation establishes reasonable cause for the complaint, then an ouster action must be instituted.[3] Tenn. Code Ann. § 8-47-103.

The ouster petition shall be in the name of the State and may be upon the relation of the Attorney General or other appropriate governmental attorney. Tenn. Code Ann. § 8-47-110. The petition must state the charges against the official with reasonable certainty. Tenn. Code Ann. § 8-47-113. An ouster action is to be "a speedy summary proceeding." *See State ex rel. Leech v. Wright*, 622 S.W.2d 807, 811(Tenn. 1981). Thus, the General Assembly provided that the defendant would have only twenty days to answer the petition, Tenn. Code Ann. § 8-47-114, and the petition and answer are the only pleadings allowed. Tenn. Code Ann. § 8-4-115. Upon application of the prosecuting attorney, the trial court may temporarily suspend the official from office pending a final hearing, as was the case here, in which event the temporary vacancy is to be immediately filled as the applicable law provides, until the ouster petition is resolved. Tenn. Code Ann. § 8-47-116. Following the final hearing and entry of judgment, either party may appeal the trial court's decision. While the appeal is pending, the judgment of the trial court remains in effect. Tenn. Code Ann. § 8-47-123.

---

[3] An ouster action may also be initiated by the Attorney General, a district attorney, a county attorney or a city attorney on his or her initiative. Tenn. Code Ann. § 8-47-102.

There are two groups of statutes that pertain to the removal of officials from public office. One set of statutes pertain to convictions of crimes.[4] *See e.g.* Tenn. Code Ann. T.C.A. § 40-20-114 which states:

Every person convicted of a felony or an infamous crime and sentenced to the penitentiary, either on the state or federal level, is disqualified from qualifying for, seeking, or holding any office under this state unless and until his citizenship rights have been restored by a court of competent jurisdiction.

The other statutory scheme does not require the conviction of a crime, *see* Tenn. Code Ann. § 8-47-101, which is the statute at issue here.[5]  Tenn. Code Ann. § 8-47-101, provides in pertinent part:

*Every person holding any office of trust* or profit, under and by virtue of any of the laws of the state, either state, county, or municipal, except such officers as are by the constitution removable only and exclusively by methods other than those provided in this chapter, *who shall knowingly or willfully commit misconduct in office*, or who shall knowingly or willfully neglect to perform any duty enjoined upon such officer by any of the laws of the state, or who shall in any public place be in a state of intoxication produced by strong drink voluntarily taken, or who shall engage in any form of illegal gambling, or who shall commit any act constituting a violation of any penal statute involving moral turpitude, *shall forfeit such office and shall be ousted from such office* in the manner hereinafter provided.

Tenn. Code Ann. § 8-47-101 (emphasis added).  At issue in this appeal is whether Crosby "knowingly or willfully committed misconduct in office."  Our research tells us that there is no bright line test for determining what is or is not knowing or willful misconduct in office. Accordingly, a thorough review of the relevant cases and the facts of this case is in order.

Prior case law holdings tell us that "ouster proceedings should not be brought unless there is a clear case of official dereliction." *Tennessee ex rel. Leech v. Wright*, 622 S.W.2d 807, 818-19 (Tenn. 1981) (citing *State ex rel Wilson v. Bush*, 208 S.W. 607 (Tenn. 1919), and *McDonald v. Brooks*, 387 S.W.2d 803 (Tenn. 1965)).  These cases also tell us that a plaintiff in an ouster suit shoulders a heightened burden of proof. *Tennessee ex rel. Thompson v. Walker*, No. 01A01-9311-CR-00486, 1994 WL 164144, at *15 (Tenn. Ct. App. May 4, 1994).

---

[4]Removal from office is automatic if the person is sentenced to the penitentiary. Tenn. Code Ann. § 40-20-114, *see* Op. Tenn. Atty. Gen. 82-163 (July 28, 1982).  It is not applicable if the person is not sentenced to the penitentiary. Op. Tenn. Atty. Gen. 82-163 (July 28, 1982).

[5]"Misconduct that would sustain an indictment under the common law would support a proceeding under the Ouster Law." *See State ex rel Barnes v. Stillwell*, 54 S.W.2d 978 (Tenn. 1932); *State ex rel Citizens of McMinn County v. Ward*, 43 S.W.2d 217 (Tenn. 1931).

In the case at bar, the plaintiff does not dispute the trial court's findings of fact. In fact, the parties are generally in agreement regarding the facts pertaining to Crosby's statements and actions in office. The parties disagree, however, as to whether these facts are sufficient, as a matter of law, to oust Crosby from office. At oral argument, the plaintiff represented that he was resting his case on five of the trial court's findings of fact to contend that Crosby should have been removed from office. Accordingly, the issue for this Court to resolve is whether those five findings of fact, which are essentially undisputed by Crosby, are sufficient to establish, as a matter of law, that Crosby knowingly or willfully engaged in misconduct in office.[6]

As used in reference to the ouster statute, the terms "knowingly" and "willfully" have been defined as encompassing "a mental attitude of indifference to consequences or failure to take advantage of means of knowledge of the rights, duties or powers of a public office holder." *Tennessee ex rel. Leech v. Wright*, 622 S.W.2d 807, 817 (Tenn. 1981) (citing *Jordan v. State*, 397 S.W.2d 383, 398 (Tenn. 1965). The *Jordan* court also noted that the terms "knowingly" and "willfully" as used in ouster proceedings are "not confined to a studied or deliberate intent to go beyond the bounds of the law." *Jordan*, 397 S.W.2d at 399. However, it requires more than "simple negligence" to constitute willful or knowing misconduct. *Id.* (holding "simple negligence in discharging the duties of an officer does not constitute or amount to an officer acting knowingly or willfully").

The relevant facts are summarized as follows:

Crosby encouraged police officers of Coopertown to "ticket soldier boys," however, there was no evidence that soldiers were ticketed more frequently than other classes of individuals, or that soldiers were ticketed in circumstances in which they were not actually traveling at speeds in excess of ten miles an hour over the posted speed limit through the city limits.

Crosby encouraged police officers of Coopertown to issue citations to Hispanic individuals due to the likelihood that these persons would not contest the citations in court, however, the evidence was insufficient to establish by the clear and convincing standard that Hispanics were stopped for suspected traffic offenses because of their race, or that Hispanic individuals were given traffic violations for offenses they did not commit.

Crosby instructed Coopertown police officers to cite and/or arrest inspectors from the Department of Labor, however, there was no evidence of any Department of Labor investigator being cited or arrested.

---

[6]Although the record in this case is voluminous, due to the fact that the trial court conducted a thorough factual inquiry into the allegations against Crosby and numerous witnesses testified, our inquiry can be restricted to the five findings of fact now at issue.

With regard to the allegations of intimidation associated with gathering signatures on the ouster petition, the trial court found that Crosby "threatened" to sue individuals who signed the petition, however, no suits were filed.

Crosby instructed Coopertown Police Officers to cite and/or arrest the individuals collecting signatures in the event their activities were blocking city streets, or otherwise posing an unreasonable risk of harm for the motoring public.

Crosby encouraged a Coopertown police officer to post scandalous information regarding a city Alderman and a political adversary on the internet, however, no such information was posted on the internet.

While there was ample testimony that Crosby advocated targeting Hispanics and members of the United States Armed forces for speeding and other traffic violations, the plaintiff failed to produce a single witness that could testify that he or she had been the victim of Crosby's directives. No witness took the stand and testified that he or she had been given a ticket or citation for a reason other than breaking the law. All the evidence against Crosby was from people who heard Crosby speaking of targeting certain groups for ticketing, but *witnesses also testified that there was no group of people that Crosby was not targeting for tickets.* (emphasis added). Thus, there is substantial and material evidence to establish that Crosby's intention was to issue as many citations as possible for the purpose of collecting revenue. Moreover, the record does not contain evidence that Crosby directed police officers to issue citations or make arrests without probable cause that an offense had occurred. Further, and significantly, the officers testified that they did not consider Crosby's statements as orders or directives.

The plaintiff suffers the same problem in regard to the other findings of fact. The trial court's finding that Crosby threatened to sue citizens of Coopertown for signing an ouster petition is fully supported in the record, however, no petition-signer was able to produce evidence that Crosby actually intended to follow through on his threat. Moreover, the plaintiff has failed to cite any authority that suggests the filing of a civil action against a political adversary constitutes "official misconduct." And as for the finding that Crosby directed Coopertown police to post scandalous comments concerning political adversaries on the internet, the record supports the finding but Crosby refuted the testimony and the evidence failed to show that scandalous information was ever posted.

To place the significance, or lack of significance of the foregoing facts in perspective, we will analyze these facts in comparison to the facts and holdings in other ouster proceedings. In a 1920 ouster action, *State ex rel. Milligan v. Jones*, 224 S.W. 1041, 1043 (Tenn. 1920), the Supreme Court affirmed the Chancellor's pronouncement of a judgment of ouster against a director of school district where there had been no meeting of the board of directors after the director had been elected, and he had repeatedly signed the names of all the directors to school warrants, he had failed and neglected to take care of the school property, and he had hauled coal from the school grounds. *Id.*, 224 S.W. at 1043 (Tenn. 1920).

In 1928 in the matter of *State ex rel. Ten Citizens of Campbell County v. Smith*, 11 S.W.2d 897 (Tenn. 1928), the Court affirmed the Chancellor's ouster of the chairman of the county board of education upon the chancellor's finding the chairman failed to countersign thousands of warrants authorized by the board of education, as Chapter 115 of the Acts of 1925 then required him to do, but instead he provided to the secretary of the school board a rubber stamp with which to sign the chairman's name to the warrants.[7]  One of the affirmative duties of the chairman of the county board of education at this time was "[t]o countersign all warrants authorized by the county board of education and issued by the county superintendent upon the county trustee for all expenditures of the elementary and the high school fund." *Id*. at 898.  The Court found:

> This action of the chairman of the county board in procuring a rubber stamp bearing a facsimile of his signature and authorizing the clerk of the board to affix this stamp to county warrants seems to us a conscious and willful neglect of an important duty enjoined by the section just above quoted. As a check upon a reckless or dishonest county superintendent in the issuance of warrants, the statute required the countersignature of the chairman of the board of education. The chairman was expected to approve and authenticate each one and thus protect the schools. Such a duty cannot be delegated to a mere clerk. For a trusted fiscal officer to knowingly and willfully shirk such a duty constitutes abundant ground for his removal from office. The chancellor correctly so held.

*Id*.

In *Tennessee ex rel. Leech v. Wright*, 622 S.W.2d 807, 817 (Tenn. 1981), the plaintiffs alleged that the defendant, Grady Wright, who held the public office of Road Superintendent of Lincoln County, engaged in wilful misconduct in office which consisted of:

> (1) failure to obtain competitive bids before purchasing materials, supplies, and equipment; (2) that he knowingly permitted county equipment, materials and supplies to be used by private individuals for private purposes in violation of T.C.A. § 54-7-202, that makes such an act by a county road superintendent a misdemeanor subject to fine or imprisonment or both; (3) that defendant permitted county employees to work for private individuals for private purposes during the same hours they were being paid by Lincoln County; (4) that the defendant misused county employees to dispense personal favors, illegally improve private property and for his own personal benefit; (5) that he used his office to discriminate against citizens who did not politically support him; and (6) that he did not maintain adequate records.

---

[7]When *State v. Smith* was decided, the Ouster Act provided for the removal of any public official "who shall knowingly or willfully neglect to perform any duty enjoined upon such officer by any of the laws of the State of Tennessee." *See State v. Smith*, 11 S.W.2d 897 (Tenn. 1928) (citing Section 1, c. 11, Acts of 1915).

*Leech*, 622 S.W.2d at 808.  The evidence established that Robert Bradford, a full time employee of the Lincoln County Highway Department whose job title was heavy equipment operator, worked for Wright Paving Company on numerous occasions at the same time he was being paid to work as a full time employee for the County.  *Id*. at 818.  The evidence also revealed that Bradford was paid his full salary by the County for the period at issue and that Wright Paving Company also paid Bradford substantial sums for the same period. *Id*.  Significantly, Wright Paving Company was owned by the son of the defendant Grady Wright, and the company was operated from the son's home which adjoined the defendant's residence and was located on the defendant's farm. *Id*. at 811.  Upon these facts, the *Leech* court determined:

> [T]here was clear and convincing evidence adduced that defendant knowingly and wilfully permitted Lincoln County equipment to be used by Wright Paving Company in violation of T.C.A. § 54-7-202 and knowingly and wilfully permitted a county employee to work for Wright Paving Company at the same time that the was being paid by Lincoln County. Those acts together with his failure to comply with his legal duty to purchase and contract for items in excess of fifteen hundred dollars upon competitive bids require that we enter a judgment of ouster.

*Leech*, 622 S.W.2d at 811-12.

We also find significant the reasoning set forth in *State ex rel. Citizens of Lawrenceburg v. Perkinson*, 19 S.W.2d 254 (Tenn. 1928).  In that matter an attempt was made to oust a city commissioner of Lawrenceburg because he had entered into a contract with the City of Lawrenceburg in which he had a personal interest, which was a violation of a statute. *Lawrenceburg*, 19 S.W.2d at 254-55.  The Court noted that he had acted as agent for the city in the purchase of land in one instance, and in another had sold the city $18.02 worth of lumber for the emergency repair of a bridge, however, neither transaction was made at a profit.  *Id.* at 255.  Upon these facts the Supreme Court concluded the commissioner could not be ousted, explaining:

> But where the act is invoked as a basis for ouster under chapter 11, Acts of 1915 [currently T.C.A. § 8-47-101], *a distinction must be drawn between the acts done in good faith but unenforceable because the statute makes them so, and acts of willful misconduct, as where a public officer corruptly and fraudulently abuses his powers in making the contract*. . . .  But public officials acting in good faith, who, through ignorance, error or oversight, run counter to a charter provision or some statute law, did not subject themselves to indictment and removal from office at common law, and under similar circumstances could not be removed from office under the Ouster Law.

*Perkinson*,  19 S.W.2d at 255 (emphasis added).

The decision is *Perkinson* has been followed in subsequent decisions. *See State ex rel. Estep v. Peters*, 815 S.W.2d 161, 164-166 (Tenn. 1991); *see also Vandergriff v. State ex rel. Davis*, 206 S.W.2d 395 (Tenn. 1947).  In a pointed recitation of the high threshold for ouster in the absence of a criminal conviction, the *Vandergriff* Court explained that "the Ouster statute is a salutary one, but

those administering it should guard against its over-encroachment." *Id.* at 397. The Court went on to opine that "human imperfections gathered together to mold charges of official dereliction . . . should amount to *knowing misconduct or failure on the part of the officer* if his office is to be forfeited. . . ." *Id*. (emphasis added). Finally, the Court proclaimed that "mere mistakes in judgment will not suffice." *Id*. This point is again emphasized in *Leech* wherein the Court stated that "ouster proceedings should only be brought in cases where "there is a clear case of official dereliction." *Leech*, 622 S.W.2d at 818 (citing *State ex rel Wilson v. Bush*, 208 S.W. 607 (Tenn. 1919), and *McDonald v. Brooks*, 387 S.W.2d 803 (Tenn. 1965)).

As the trial court found, Crosby's conduct and statements are strongly suggestive of "bigotry, sexism or utter foolishness"; however, the record does not contain clear and convincing evidence that Crosby's conduct or statements constitute "corrupt or fraudulent abuse of his powers" as mayor or that Crosby "knowingly or willfully engaged in misconduct in office." It is also significant to note that, at first blush, it appears that Crosby was discriminating against "Hispanics" and "soldier boys" among other demographic groups, by targeting them for traffic violations. Upon a closer review of the record, however, it becomes apparent that Crosby wanted the police officers to ticket anyone and everyone for traffic violations in order to help finance the City' operations. Accordingly, and although Crosby used crude, boorish language to communicate his wishes, essentially every motorist, regardless of race, creed, or national origin, was targeted. Accordingly, his crude expressions did not materialize in actions that constitute unlawful discrimination.

Recognizing that the statutory requirements for ouster of a public official are very high, we have concluded that the record fails to establish by clear and convincing evidence that Crosby corruptly and fraudulently abused his powers as mayor or that he knowingly or willfully committed official misconduct in office. Accordingly, the evidence is insufficient to sustain a petition for ouster. We, therefore, affirm the trial court's decision not to issue a Writ of Ouster and its decision to return Crosby to the office of Mayor of the City of Coopertown, Tennessee.

## ATTORNEY FEES

As to the trial judge's order denying Crosby attorney fees, the language of the ouster statute provides that "[a]fter final hearing on the complaint or petition, any public officer not removed from office, or if the officer has been suspended, any officer immediately restored to office, *may* be reimbursed reasonable attorney fees . . . ." Tenn. Code Ann. § 8-47-121 (emphasis added). Because the language of the statute makes the award of attorney fees discretionary, our review of the trial judge's decision is subject to the very deferential abuse of discretion standard.

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." A trial court abuses its discretion only when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning or that causes an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (citations omitted).

The record reveals that the trial court applied the correct legal standard to the request for attorneys fees. Moreover, with Crosby's boorish behavior at the center of this dispute, we find it disingenuous that Crosby argues that the decision of the trial causes an injustice to Crosby or is against logic or reasoning. Therefore, we find no error in the trial court's decision to deny Crosby's request to recover his attorney fees.

## ISSUE PRESENTED IN BRIEF OF AMICUS CURIAE

The City of Coopertown filed an *amicus curiae* brief expressing uncertainty and thus concern that the discretionary costs awarded by the trial court may have been assessed against the City of Coopertown. We, however, find no justification for this concern. First, we do not read the trial court's order to suggest the costs are to be awarded against the City of Coopertown. Second, the City of Coopertown was never a party to this action and the courts only have jurisdiction over parties, meaning persons or entities who or which are properly before the court.

Tenn. Code Ann. § 8-47-121 provides that the petition or complaint for ouster of a public official shall be in the name of the state and may be upon the relation of the district attorney general, as was the case here.[8] The style of this case clearly represents the action was brought by the State of Tennessee upon the relation of John W. Carney, Jr., as the District Attorney General. Thus, to the extent costs are not assessed against the defendant, Danny J. Crosby, the only other party against which they may be assessed is the plaintiff, the State of Tennessee.

## IN CONCLUSION

Considering all of the above, the judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed equally against the plaintiff, the State of Tennessee, and the defendant, Danny J. Crosby.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[8]The petition may also be brought in relation of the attorney general and reporter, or the county attorney in the case of county officers, and of the city attorney or the district attorney general in the case of municipal officers; and in all cases it may be filed upon the relation of ten or more citizens of the state, county or city upon their giving the usual security for costs. Tenn. Code Ann. § 8-47-121.

-11-