IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 16, 2025 Session

## STATE OF TENNESSEE EX REL. MARLINEE IVERSON, COUNTY ATTORNEY FOR SHELBY COUNTY, TENNESSEE
v.
## WANDA HALBERT

**Appeal from the Circuit Court for Shelby County**
**No. CT-3270-24      Felicia Corbin Johnson, Judge**

_____

**No. W2025-00097-COA-R3-CV**

_____

A complaint for ouster was filed nominally on behalf of the Shelby County Attorney against Shelby County Clerk Wanda Halbert. The defendant clerk filed a motion to dismiss, arguing that the plaintiff lacked standing because the complaint was being prosecuted by a deputy county attorney and outside counsel due to a personal conflict of interest by the named county attorney. The plaintiff then filed a motion for default judgment, arguing that a motion to dismiss was not a proper pleading under the ouster statutes. The trial court denied the motion for default judgment and permitted the defendant clerk to file an answer. The trial court then dismissed the case for lack of subject matter jurisdiction due to the plaintiff's lack of standing. We affirm the denial of the motion for default judgment, reverse the dismissal for lack of subject matter jurisdiction, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Reversed in Part, and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ANDY D. BENNETT and CARMA DENNIS MCGEE, JJ., joined.

Robert D. Meyers, Danielle Rassoul, and Aubrey B. Greer, Memphis, Tennessee, for the appellant, Shelby County, Tennessee.

Darrell J. O'Neal and Misty L. O'Neal, Memphis, Tennessee, for the appellee, Wanda Halbert.

# OPINION

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 2, 2024, Petitioner/Appellant the State of Tennessee, upon relation of Marlinee Iverson ("County Attorney Iverson"), County Attorney for Shelby County, Tennessee ("the County" and collectively, "Appellant") filed a petition to remove Respondent/Appellee Wanda Halbert ("Appellee") from her office as Shelby County Clerk for neglect of duty in the Shelby County Circuit Court ("the trial court"). Appellant requested that Appellee be suspended from the performance of her duties pending a final ruling. Relevant to this appeal, the petition recited Tennessee Code Annotated section 8-47-110, which provides that a petition for ouster may be filed "in the name of the state and may be filed upon the relation of . . . the county attorney in the case of county officers[.]" The petition explained that County Attorney Iverson could not represent Appellant due to a conflict of interest and so appointed her office's chief litigation attorney, Deputy County Attorney Lee Whitwell ("Deputy County Attorney Whitwell"), to act in her place. Deputy County Attorney Whitwell then retained private counsel "to serve as a special deputy County Attorney to prosecute this action on behalf of the County Attorney's Office." The petition was signed only by private counsel, Robert D. Meyers ("Attorney Meyers") of the Memphis law firm, Glankler Brown PLLC.

On August 23, 2024, Appellee filed a motion to dismiss for lack of subject matter jurisdiction. Appellee argued that (1) Appellant lacked standing; (2) a private attorney cannot maintain an ouster action on behalf of the County; and (3) an agent cannot perform functions its principal is not authorized to perform. In the memorandum accompanying the motion, Appellee argued that the ouster statute does not include a private attorney like Attorney Meyers among those with the authority to bring an ouster action, and the County Attorney is not authorized to appoint outside counsel for extraordinary litigation on behalf of the County. Appellee further asserted that County Attorney Iverson could not appoint an agent to prosecute this ouster action when she admitted to being disqualified from prosecuting the case herself.

On September 6, 2024, Appellant filed a motion for default judgment against Appellee. Therein, Appellant alleged that Appellee was served on August 6, 2024, but had failed to file an answer within twenty days of service as required by Tennessee Code Annotated section 8-47-114, and that pursuant to Tennessee Code Annotated section 8-47-115, a motion to dismiss was not a permissible pleading in an ouster action. Appellant further noted that Appellee failed to seek an extension of the time for answering. So Appellant asked that the trial court exercise its discretion to enter a default judgment against Appellee and "order[] her immediate removal from the Office of Shelby County Clerk."

On the same day, Appellant also responded to Appellee's motion to dismiss. Therein, Appellant argued that Appellee had conflated standing and representation; while Attorney Meyers was representing the County Attorney in this action, the county attorney was still the prosecuting party. Indeed, Appellant asserted that "[a]t all times, the Plaintiff/Petitioner is County Attorney Iverson." Because the action served to enforce state law, Appellant argued that it was not extraordinary litigation and no approval was needed for the County Attorney or the Deputy County Attorney to hire outside counsel.

Appellee filed a response in opposition to the motion for default judgment on September 11, 2024. Therein, she argued that a motion to dismiss is permitted in ouster actions where standing and subject matter jurisdiction are at issue. Moreover, Appellee asserted that her challenge to the trial court's subject matter jurisdiction must be addressed prior to consideration of the motion for default judgment.

On September 13, 2024, the parties appeared before the trial court on Appellant's motion for default judgment. During the hearing, the trial court stated that it was disinclined to grant a default judgment and asked counsel for Appellee if an answer could be filed shortly. Counsel agreed that an answer could be filed in three days. So the trial court ruled that the motion for default judgment was taken under advisement and would likely be granted if no answer was filed. Appellee then filed an answer on September 16, 2025, reiterating her lack of standing affirmative defense, raising failure to state a claim because the petition failed to demonstrate that the negligence alleged was willful, and otherwise denying the material allegations contained in Appellant's complaint. Appellee also asked that she be awarded "reasonable costs and attorney's fees as authorized by statute."

The parties again appeared before the trial court on September 17, 2024, to argue Appellee's motion to dismiss. At the conclusion of the hearing, the trial court stated that it would enter a written ruling after reviewing the parties' written argument. On September 27, 2024, the trial court entered a written order taking the motion to dismiss under advisement and seeking supplemental briefing from the parties to address (1) the person overseeing and managing the litigation; (2) the authority of the Deputy County Attorney to "step into the shoes or duties of the [C]ounty [A]ttorney" in an ouster action; (3) the effect of County Attorney Iverson's conflict of interest on her office and the prosecution of this case; (4) the ability of a party with a conflict to be the prosecuting plaintiff in an ouster action; (5) the real party in interest in an ouster action; and (6) the existence and nature of any attorney-client relationship. The parties thereafter filed supplemental briefs addressing these questions. In her supplemental brief, Appellee reiterated that she should be awarded attorney's fees under Tennessee Code Annotated section 8-47-121. After a status conference on November 6, 2024, the trial court requested a second round of supplemental briefing focused on questions pertaining to County Attorney Iverson's conflict of interest. Appellant and Appellee filed additional supplemental briefs on November 11, 2024, and November 18, 2024, respectively.

On January 14, 2025, the trial court entered an order denying Appellant's motion for default judgment, concluding that while Appellee had not filed an answer in the required time, she had otherwise defended her case within that time. The order therefore ruled that Appellee would be permitted an additional five days to file an answer. Appellant filed a notice of appeal on January 17, 2025.

On February 14, 2025, the trial court entered an order granting Appellee's motion to dismiss.[1] The trial court concluded that an ouster petition may be brought in the name of the State upon relation of the County Attorney. But the trial court questioned how the case could be brought based on the information of County Attorney Iverson when she admits that she has a disqualifying conflict of interest. So the trial court concluded that County Attorney Iverson is only a "straw person," not a real party to this action.

The trial court also concluded that the statute does not include private attorneys or Assistant/Deputy County Attorneys among those with standing to bring an ouster action. Because Deputy County Attorney Whitwell could not bring the action, either in his own name or on behalf of the County Attorney or the State, he did not have the authority to hire private counsel to do so. Thus, the trial court ruled that Appellant does not have standing, and the trial court lacked subject matter jurisdiction over the complaint. The trial court pretermitted Appellee's agency argument.[2]

## II. ISSUES PRESENTED

Appellant raises the following issues, which are taken from its brief:

1. Whether the trial court erred in determining that the county attorney is not permitted to delegate the authority to litigate and oversee legal proceedings brought under Tenn. Code Ann. §§ 8-47-101, et seq., when the county attorney has a conflict of interest that prevents her from participating in the litigation.
2. Whether the trial court erred in denying Appellant's motion for default judgment when Appellee failed to timely answer under Tenn. Code Ann. § 8-47-114 and there was not a finding of excusable neglect.

Appellee also raises an issue regarding this Court's subject matter jurisdiction to adjudicate this appeal due to the lack of a final judgment.

## III. ANALYSIS

---

[1] An amended order was entered on March 14, 2025, to comply with Tennessee Rule of Civil Procedure 58's certificate of service requirements.

[2] While this appeal was pending, the parties sought to engage in voluntary mediation under Rule 34 of the Tennessee Rules of Appellate Procedure. Shortly thereafter, however, one party withdrew its consent to participate in mediation, and this appeal proceeded.

## A.

We begin with this Court's subject matter jurisdiction, as it must be considered before we reach the substantive issues in this appeal. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) ("Challenges to a court's subject matter jurisdiction call into question the court's lawful authority to adjudicate a controversy brought before it, and, therefore, should be viewed as a threshold inquiry." (quotation marks and citations omitted)). "Subject matter jurisdiction involves a court's lawful authority to adjudicate a controversy brought before it." *Chapman v. DaVita, Inc.*, 380 S.W.3d 710, 713 (Tenn. 2012) (citing *Meighan v. U.S. Sprint Commc'ns Co.*, 924 S.W.2d 632, 639 (Tenn. 1996); *Standard Sur. & Cas. Co. v. Sloan*, 180 Tenn. 220, 173 S.W.2d 436, 440 (1943)). The lack of subject matter jurisdiction cannot be waived. *Meighan*, 924 S.W.2d at 639. "Without subject matter jurisdiction, a court cannot enter a valid, enforceable order." *In re S.L.M.*, 207 S.W.3d 288, 295 (Tenn. Ct. App. 2006) (citations omitted).

Under Rule 3 of the Tennessee Rules of Appellate Procedure, an appeal as of right may be taken only after the entry of a final judgment. *See* Tenn. R. App. P. 3(a) ("In civil actions every final judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Appeals is appealable as of right."); *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 559 (Tenn. 1990) ("Unless an appeal from an interlocutory order is provided by the rules or by statute, appellate courts have jurisdiction over final judgments only."). An order that adjudicates fewer than all of the claims, rights, or liabilities of all the parties is not final and generally cannot be appealed as of right. *In re Est. of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003).

In this appeal, Appellee argues that this Court lacks subject matter jurisdiction because the trial court did not rule on her motion for attorney's fees. It is true that when the trial court fails to rule on a request for attorney's fees, the trial court's judgment is typically non-final. *See, e.g.*, *City of Jackson v. Hersh*, No. W2008-02360-COA-R3-CV, 2009 WL 2601380, at *4 (Tenn. Ct. App. Aug. 25, 2009) ("This Court has concluded on several occasions that an order that fails to address an outstanding request for attorney's fees is not final.").

As an initial matter, we must note that although the parties reference a February 20, 2025 motion for attorney's fees, no such motion is included in the appellate record. While the duty to prepare a record often falls to the appellant in an appeal, the appellee has a responsibility to ensure that the record contains any matters that are necessary to its own arguments on appeal. *See* Tenn. R. App. P 24(a) (giving the appellee an opportunity to designate additional parts of the record for inclusion on appeal), (e) (allowing supplementation or correction of the record if matters are omitted). Still, the record does contain several filings by Appellee in which she did raise her request for attorney's fees while this case was clearly ongoing. So it does appear that a request for attorney's fees was both properly raised in the trial court and evidenced on appeal.

We note, however, that the statutory provision that Appellee relies upon specifically stays reimbursement of cost and fees should an appeal be filed:

> After final hearing on the complaint or petition, any public officer not removed from office, or if the officer has been suspended, any officer immediately restored to office, may be reimbursed reasonable attorney fees by the appropriate state, county, municipality, or other political subdivision. If either party appeals pursuant to § 8-47-123, no such reimbursement shall be made until a final judgment is rendered.

Tenn. Code Ann. § 8-47-121. Appellant asserts that this provision means that an award of attorney's fees under section 8-47-121 is not appropriate until all appeals have been exhausted. Appellee appears to argue that section 8-47-121 requires that the trial court take up an award of costs and fees following the final hearing in an ouster action but prior to an appeal. It does not appear that any cases considering this statute have addressed whether this Court lacks subject matter jurisdiction when a trial court fails to rule on a request for fees under section 8-47-121. *But see* **State ex rel. Carney v. Crosby**, 255 S.W.3d 593, 602 (Tenn. Ct. App. 2008) (where the trial court denied a request for attorney's fees under section 8-47-121 prior to the appeal as of right).

We need not resolve this dispute, however, as Rule 2 of the Tennessee Rules of Appellate Procedure permits this Court to waive many of the rules of appellate procedure for good cause. The Tennessee Supreme Court has specifically held that waiver may apply to the finality rule. *See* **Bayberry Assocs.**, 783 S.W.2d at 559. In this case, the question of whether Appellant is a proper plaintiff and ultimately whether Appellee should be removed from office are of great public importance. The ouster statutes contemplate that actions such as this should be resolved expeditiously. *See* **State ex rel. Jones v. Looper**, 86 S.W.3d 189, 198 (Tenn. Ct. App. 2000) ("Based on the language of the statutes, our courts have held that the legislature intended ouster actions to be conducted in speedy summary proceedings."); *see also* Tenn. Code Ann. § 8-47-119(a) ("Such proceedings in ouster shall be summary and triable as equitable actions, shall have precedence over civil and criminal actions, and shall be tried at the first term after the filing of the complaint or petition herein named[.]"), (b) ("A continuance may be granted either side for good cause shown, but no continuance shall be granted by an agreement of the parties."). Moreover, as detailed *infra*, we reverse the trial court's dismissal of this case, but affirm the trial court's denial of Appellant's motion for default judgment. This ruling means that the case is still pending with its outcome yet to be determined. As such, the question of attorney's fees under section 8-47-121 is rendered premature. So we exercise our discretion to consider this appeal notwithstanding Appellee's contention that the trial court's judgment is non-final.

**B.**

We therefore proceed to consider whether the trial court erred in granting Appellee's motion to dismiss for lack of subject matter jurisdiction, which took aim at both the delegation of prosecution of this action to Deputy County Attorney Whitwell, as well as the hiring of Attorney Meyers. The trial court's decision to grant or deny a motion to dismiss alleging a lack of subject matter jurisdiction due to issues of standing is reviewed de novo with no presumption of correctness. ***Rutan-Ram v. Tenn. Dep't of Child.'s Servs.***, 698 S.W.3d 540, 548 (Tenn. Ct. App. 2023). We consider the pleadings alone and take all factual allegations in the light more favorable to the plaintiff. ***Id.***

We begin our consideration with the ouster statutes upon which this case rests. The ouster law provides a means by which public officers may be removed from office, Tennessee Code Annotated section 8-47-101 through -115. Pursuant to section 8-47-101,

> Every person holding any office of trust or profit, under and by virtue of any of the laws of the state, either state, county, or municipal, except such officers as are by the constitution removable only and exclusively by methods other than those provided in this chapter, who shall knowingly or willfully commit misconduct in office, or who shall knowingly or willfully neglect to perform any duty enjoined upon such officer by any of the laws of the state, or who shall in any public place be in a state of intoxication produced by strong drink voluntarily taken, or who shall engage in any form of illegal gambling, or who shall commit any act constituting a violation of any penal statute involving moral turpitude, shall forfeit such office and shall be ousted from such office in the manner hereinafter provided.

The ouster statutes authorize certain individuals or groups to institute ouster proceedings:

> The attorney general and reporter has the power, on the attorney general and reporter's own initiative, and without any complaint having been made to the attorney general and reporter or request made of the attorney general and reporter, to institute proceedings in ouster against any and all state, county, and municipal officers, under this chapter, and the district attorneys general, county attorneys, and city attorneys, within their respective jurisdictions, may institute such actions, without complaint being made to them or request made of them, as they are authorized to institute upon request made of them or complaint made to them.

Tenn. Code Ann. § 8-47-102; *see also* Tenn. Code Ann. § 8-47-103 (giving the attorney general and reporter, the district attorneys general, county attorneys, and city attorneys, within their respective jurisdictions, the duty to investigate written complaints against officers and stating that "if upon investigation such person finds that there is reasonable cause for such complaint, such person **shall** forthwith institute proceedings in the circuit, chancery, or criminal court of the proper county, to oust such officer from office"

(emphasis added)). Moreover,

> The petition or complaint [for ouster] shall be in the name of the state and may be filed upon the relation of the attorney general and reporter, or the district attorney general for the state, or the county attorney in the case of county officers, and of the city attorney, or the district attorney general, in the case of municipal officers; and in all cases it may be filed, without the concurrence of any of such officers, upon the relation of ten (10) or more citizens and freeholders of the state, county, or city, as the case may be, upon their giving the usual security for costs.

Tenn. Code Ann. § 8-47-110.

Ostensibly under the authority of the ouster statutes, a petition was filed in this case seeking to oust Appellee for alleged dereliction of duty. There is no dispute that the ouster statute authorizes the County Attorney, in this case County Attorney Iverson, to prosecute such an action on relation of the State of Tennessee. But Appellee argues that the undisputed facts demonstrate that County Attorney Iverson recused herself from this matter due to a conflict of interest and delegated the prosecution of the ouster complaint to a deputy in her office. Appellee argues, however, that only County Attorney Iverson was authorized to prosecute the action under section 8-47-102, and that she could not delegate this duty to another member of her staff or to a private attorney. In other words, Appellee argues that the ouster statutes confer standing on County Attorney Iverson alone to personally prosecute this case and that where a conflict disqualifies her from personally prosecuting this action, she may not cure the conflict by delegating authority to do so to a member of her staff. Appellant argues, in contrast, that the petition is still being brought by the County Attorney's office, and that nothing in the ouster statutes prevents County Attorney Iverson from delegating responsibility for the complaint to a member of her staff or from hiring outside counsel.

The doctrine of standing is used "to determine whether a particular litigant is entitled to have a court decide the merits of a dispute or of particular issues." *Am. C.L. Union of Tenn. v. Darnell*, 195 S.W.3d 612, 619 (Tenn. 2006). Non-constitutional standing, the kind at issue in this case "focuses on considerations of judicial restraint, such as whether a complaint raises generalized questions more properly addressed by another branch of the government, and questions of statutory interpretation, such as whether a statute designates who may bring a cause of action or creates a limited zone of interests." *City of Memphis v. Hargett*, 414 S.W.3d 88, 98 (Tenn. 2013). In some cases, a lack of standing will deprive the court from considering an issue:

> Ordinarily, issues of non-constitutional standing are not essential to subject matter jurisdiction and are waived if not properly preserved. However, "[w]hen a statute creates a cause of action and designates who may bring an

action, the issue of standing is interwoven with that of subject matter jurisdiction and becomes a jurisdictional prerequisite." ***Osborn v. Marr***, 127 S.W.3d 737, 740 (Tenn. 2004).

*Id.* at 98 n.8 (first citation omitted).[3]

"The lack of subject matter jurisdiction is so fundamental that it requires dismissal whenever it is raised and demonstrated." ***Dishmon v. Shelby State Cmty. Coll.***, 15 S.W.3d 477, 480 (Tenn. Ct. App. 1999) (citing Tenn. R. Civ. P. 12.08). "Thus, when an appellate court determines that a trial court lacked subject matter jurisdiction, it must vacate the judgment and dismiss the case without reaching the merits of the appeal." *Id.* (citing ***J.W. Kelly & Co. v. Conner***, 122 Tenn. 339, 397, 123 S.W. 622, 637 (1909)). Where subject matter jurisdiction is challenged, the party asserting that subject matter jurisdiction exists . . . has the burden of proof." ***Johnson v. Hopkins***, 432 S.W.3d 840, 844 (Tenn. 2013). Here, Appellee asserts that the ouster statutes limit who may bring an ouster petition and that because neither Deputy County Attorney Whitwell nor Attorney Meyers is among this exclusive list, the complaint against her must be dismissed.

As is evident from the above, much of this dispute involves the interpretation and application of statutes and ordinances. As the Tennessee Supreme Court has previously explained:

> The cardinal canon of statutory construction requires the courts to ascertain and to carry out the General Assembly's intent. A statute's intent is reflected in the statute's words, and, therefore, we must focus initially on the words of the statute. When the words of the statute are clear and unambiguous, we need not look beyond the statute, but rather, we must simply enforce the statute as it is written.

***Norma Faye Pyles Lynch Fam. Purpose LLC***, 301 S.W.3d at 213 (citations omitted); *see also* ***State ex rel. Moore & Assocs., Inc. v. Cobb***, 124 S.W.3d 131, 133 (Tenn. Ct. App. 2003) ("[W]e construe ordinances using the same principles we would if construing a statute." (citing ***Lions Head Homeowners' Ass'n v. Metro. Bd. of Zoning Appeals***, 968 S.W.2d 296, 301 (Tenn. Ct. App. 1997))). Additionally, we must consider the whole text of the statute and the overall statutory framework, ensuring that we "interpret each word

---

[3] On October 22, 2025, the Tennessee Supreme Court issued an opinion in which it held that "so-called 'shareholder standing' principles" did not implicate subject matter jurisdiction. ***Houghton v. Malibu Boats, LLC***, No. E2023-00324-SC-R11-CV, 2025 WL 2971436, at \*1 (Tenn. Oct. 22, 2025). In discussing "statutory standing," the court noted that "the United States Supreme Court recently raised questions about the proper categorization of this concept." *Id.* at \*10 n.17 (citing ***Lexmark Int'l, Inc. v. Static Control Components, Inc.***, 572 U.S. 118, 128 n.4, 134 S. Ct. 1377, 1388, 188 L. Ed. 2d 392 (2014)). Because the concept of statutory standing was "wholly inapplicable under the circumstances of th[at] case," the court concluded that it had "no occasion to address its place within the doctrine of standing in Tennessee." *Id.* We therefore apply Tennessee Supreme Court precedent concerning statutory standing as it currently exists.

'so that no part will be inoperative, superfluous, void or insignificant.'" ***State v. Deberry***, 651 S.W.3d 918, 925 (Tenn. 2022) (quoting ***Bailey v. Blount Cnty. Bd. of Educ.***, 303 S.W.3d 216, 228 (Tenn. 2010)). In other words, "[i]n interpreting statutes, . . . we are required to construe them as a whole, read them in conjunction with their surrounding parts, and view them consistently with the legislative purpose." ***Coffman v. Armstrong Int'l, Inc.***, 615 S.W.3d 888, 897 (Tenn. 2021) (quoting ***Lind v. Beaman Dodge, Inc.***, 356 S.W.3d 889, 897 (Tenn. 2011)). Statutes must also be construed "with the saving grace of common sense." ***State ex rel. Maner v. Leech***, 588 S.W.2d 534, 540 (Tenn. 1979). Thus, "a construction which impairs, frustrates or defeats the object of a statute should be avoided[.]" ***Id.*** (citing ***First Nat'l Bank v. McCanless***, 186 Tenn. 1, 207 S.W.2d 1007 (Tenn. 1948)). Moreover, while "we presume that every word in a statute has meaning and purpose and should be given full effect," this rule applies only "if the obvious intention of the General Assembly is not violated by so doing" ***Colonial Pipeline Co. v. Morgan***, 263 S.W.3d 827, 836 (Tenn. 2008) (citing ***In re C.K.G.***, 173 S.W.3d 714, 722 (Tenn. 2005)).

Both the parties and the trial court focus on two central cases: ***Jordan v. State ex rel. Williams***, 217 Tenn. 307, 397 S.W.2d 383 (1965), and ***State, ex rel. Estep v. Peters***, 815 S.W.2d 161 (Tenn. 1991). In ***Jordan v. State ex rel. Williams***, a petition was filed to oust a Shelby County Commissioner from his office. 397 S.W.2d at 385. The trial court granted the ouster and the commissioner appealed. On appeal, the commissioner argued that the trial court should have dismissed the ouster petition because it was not brought by the proper petitioner. ***Id.*** at 395. Although the commissioner conceded that the petition was brought by the official county attorney, he argued that the power to appoint the county attorney had been placed with the Shelby County Commission by a private act, and the Commission had retained another attorney to serve as special counsel. ***Id.*** at 395–96. This outside counsel was argued to be the proper petitioner in the ouster action. But the Tennessee Supreme Court held that the Legislature had the "unquestioned authority to prescribe the mode of procedure" for ouster actions and had specifically vested that authority in the county attorney. ***Id.*** at 396. Thus, the County Commission did not have the power under the ouster statute to file an ouster petition and their privately retained attorney, who "was never the official county attorney," was not the proper party to petition for ouster. ***Id.***

The trial court relied on ***Jordan*** to hold that Appellant lacked standing, reasoning that because Deputy County Attorney Whitwell had no authority under the ouster statute, he likewise could not retain private counsel to prosecute this action. And the trial court explained that "[t]he Deputy County Attorney does not have jurisdiction or the right to bring an ouster petition. That is clear. There is no one before this Court that is going to argue with that."

But Appellant does disagree with that conclusion, arguing that the ouster statute does not mandate that the County Attorney *personally* prosecute an action for ouster but rather requires that the action is brought by the County Attorney's *office*. In support of this

argument, Appellant cites ***State, ex rel. Estep v. Peters***. In ***Peters***, the Clairborne County Attorney brought a petition on relation of the State to oust a school superintendent from office. 815 S.W.2d at 161. After the ouster was successful, the superintendent argued on appeal, inter alia, that the trial court should not have permitted James D. Estep, III, the county attorney, to prosecute the petition "when he was simultaneously representing the defendant in other litigation." ***Id.*** at 166. In other words, the superintendent argued that an ongoing conflict prevented the person who was serving as county attorney from prosecuting the action against him. But the Tennessee Supreme Court easily disagreed, noting that "[t]he participation of Estep in this litigation amounted to little, if any, more than the use of his title (county attorney), as is appropriate under [sections] 8-47-102 and 8-47-110."[4] ***Id.*** Moreover, the superintendent could demonstrate no prejudice that resulted from Estep's participation. ***Id.***

Appellant argues that the ***Peters*** decision stands for the proposition that under section 8-47-102, an ouster petition is brought under the title or office of the County Attorney, not necessarily by the County Attorney personally. According to Appellant, it was therefore not deprived of the statutory standing conferred by the ouster statutes simply because prosecution of this case was delegated to a member of County Attorney Iverson's staff due to her conflict of interest.

The trial court concluded that ***Peters*** was distinguishable, however, because Estep chose not to formally recuse in that case, unlike County Attorney Iverson. Looking beyond the text of the ***Peters*** opinion to the case record itself, the trial court also noted that while Estep also employed an outside attorney, Estep actually signed some of the pleadings in that case.[5] Given that the Tennessee Supreme Court affirmed the finding that no prejudice had been shown, the trial court concluded that ***Peters*** stands for the proposition that despite Estep "participating" in the case, "his participation was not going to be harmful to the defendant." But the trial court concluded that County Attorney Iverson "is not able to participate in the way that the Court discussed in ***Estep***" due to her "self-imposed, self-determined" recusal. The trial court further ruled that this case was analogous with ***Jordan*** in that like the County Commission there, the County Attorney in this case had no authority to hire outside counsel to prosecute the ouster action.

As an initial matter, it appears that the trial court attempted to recharacterize the conflict in ***Peters*** as somehow less problematic than the conflict at issue here simply because County Attorney Iverson chose to remove her participation on the front end, rather than argue a lack participation on the back end. In ***Peters***, Estep was representing the superintendent in another matter while "simultaneously" prosecuting the ouster action. 815 S.W.2d at 166. In this case, however, the disqualifying litigation involving Appellee and

---

[4] The language of neither statute has been amended since the ***Peters*** decision, or at any time since their enactment.

[5] The parties submitted these pleading to the trial court during their briefing.

County Attorney Iverson is not concurrent with the ouster action.[6] Tennessee Rule of Professional Responsibility 1.10(d) specifically states that the rules governing conflicts with current and former clients apply to a lawyer "serving as a public officer or employee[.]" Tenn. R. Sup. Ct. 8, RPC 1.10(d)(1) (citing Tenn. R. Sup. Ct. RPC 1.7 (involving conflicts with current clients), 1.9 (involving conflicts with former clients)).[7] But the Rules of Professional Conduct recognize that conflicts involving current clients are more problematic than conflicts with former clients, as the rule governing the latter is "more lenient" than the rule governing the former. *Howell v. Morisy*, No. W2020-00343-COA-R9-CV, 2020 WL 6821698, at *4 (Tenn. Ct. App. Nov. 20, 2020) (quoting *Garland v. Ford Motor Co.*, No. 2:12-00121, 2015 WL 1401030, at *6 (M.D. Tenn. Mar. 26, 2015)). To reframe the *Peters* conflict as being non-serious in order to distinguish it from this case is, respectfully, pure fiction.

The trial court's focus on the pleadings from *Peters* to determine exactly how much participation Estep had in the action was similarly misguided. Indeed, the Tennessee Supreme Court in *Peters* did not concern itself with tallying the number of contacts that Estep had with the case to determine whether it fell above or below some arbitrary line of participation; nothing in the opinion discusses whether Estep signed pleadings or how much he actually participated in the litigation. *Peters*, 815 S.W.2d at 166. Instead, in citing Estep's "little, *if any*" participation in the case beyond the use of his title, it appears that the Tennessee Supreme Court viewed Estep's participation as being so miniscule as to be irrelevant. *Id.* (emphasis added). The fact that the case was brought using Estep's "title" suggests that the Tennessee Supreme Court viewed Estep's participation in the case as being in name only. The reasonable interpretation of *Peters* is therefore that it was this minimal to non-existent involvement in the actual prosecution of the ouster action that led the court to conclude that Estep's participation in the case was not prejudicial, not the fact that the conflict there was somehow less problematic due to Estep's decision not to recuse. Essentially, then, the Tennessee Supreme Court approved of a scheme wherein the titled county attorney was permitted to employ another attorney to prosecute an ouster action when the county attorney was disqualified from doing so as the result of a serious conflict of interest.

What occurred in this case is very similar. While the county attorney in *Peters* did not formally announce that he would not participate in the case, leading to the motion to dismiss on the basis of his involvement, the Tennessee Supreme Court concluded that his minimal involvement in the case and decision to turn over prosecution of the ouster petition

---

[6] The trial court's order of dismissal recites that County Attorney Iverson's conflict "arises from a prior representation or involvement with [Appellee]."

[7] Under Rule 1.7, a lawyer is not permitted to represent two clients simultaneously if "the representation of one client will be directly adverse to another client[.]" Tenn. Sup. Ct. R. 8, RPC 1.7(a)(1). It is difficult to conceive how an effort to remove a client from his or her official office is not directly adverse to that client. As counsel for Appellee succinctly stated during one hearing: "You cannot sue your client."

to another attorney was sufficient to prevent any prejudice. County Attorney Iverson has a similar conflict as was alleged in *Peters*—she has previously represented Appellee in other litigation. And she followed almost exactly the same procedure as Estep by delegating the duty to prosecute this case to a deputy in her employ, with that deputy then retaining outside counsel to represent the office of the County Attorney in this specific litigation. The only substantive difference is that County Attorney Iverson was fully transparent when she filed her petition, stating that she was not participating in the prosecution of the petition due to a conflict. Thus, Appellee seeks to disqualify the entire Shelby County Attorney's office, based essentially upon County Attorney Iverson's actions in following the procedure set forth in *Peters*.

Appellee cites nothing to suggest that it was against the Tennessee Rules of Professional Conduct for County Attorney Iverson to delegate the prosecuting authority in this case to a subordinate in her office and to screen herself from participation in this case. The Shelby County Code of Ordinances permit the hiring of employee lawyers to work in the Shelby County Attorney's office. *See* Shelby Cnty. Code § 2-251 ("The county attorney's office . . . shall consist of the county attorney, who shall be the chief legal officer of the county, together with assistant county attorneys and such other employees as may from time to time be assigned to the county attorney's office."). Moreover, Tennessee law recognizes that in the case of government attorneys, conflicts are not typically imputed to other attorneys in their agencies, particularly where the lawyer with a conflict is screened from the representation. *See* Tenn. Sup. Ct. R. 8, RPC 1.11 cmt. 2 ("Because of the problems raised by imputation within a government agency, paragraph (d) does not impute the conflicts of a lawyer currently serving as an officer or employee of the government to other associated government officers or employees, although ordinarily it will be prudent to screen such lawyers."). In this case, there is no evidence to indicate that County Attorney Iverson was not properly screened from participation in this matter or that Deputy County Attorney Whitwell shares in her conflict of interest. Thus, it appears that there is no *ethical* bar to what occurred here,[8] the only question is whether the ouster statute permits it.

As we perceive it, the parties fundamentally disagree as to how the silence of the ouster statutes should be interpreted. Appellant argues that because the ouster statutes are silent as to how a personal conflict of interest by a county attorney should be handled, the typical Rules of Professional Conduct control, allowing County Attorney Iverson to appoint a member of her staff to handle the case, and for that staff member to retain private counsel to represent the County Attorney. In contrast, in the face of legislative silence, Appellee argues that the list of parties authorized to bring ouster complaints should not be expanded beyond those specific individuals who must personally investigate and prosecute

---

[8] To the extent that Appellee suggests that it was improper for County Attorney Iverson to be involved in delegating any responsibility to her staff due to her conflict of interest, we respectfully disagree, as County Attorney Iverson and her staff are presumed to act in good faith and in accordance with the law. *See generally* **State ex rel. Com'r of Transp. v. Med. Bird Black Bear White Eagle**, 63 S.W.3d 734, 775 (Tenn. Ct. App. 2001) (discussed in detail, *infra*).

each ouster action. Thus, in a way, Appellee argues for a strict construction of the statute.

Tennessee courts, however, have long characterized the ouster statutes as remedial in nature. *See e.g.*, ***Marshall v. Sevier Cnty.***, 639 S.W.2d 440, 443 (Tenn. Ct. App. 1982) ("[T]he ouster law is remedial and cumulative to the general removal provisions." (citing ***Broyles v. State***, 207 Tenn. 571, 341 S.W.2d 724 (1960)); ***State v. Ward***, 163 Tenn. 265, 43 S.W.2d 217, 219 (1931); *see also* ***In re D.A.H.***, 142 S.W.3d 267, 273 (Tenn. 2004) ("Remedial statutes are defined as legislation providing means or method whereby causes of action may be effectuated, wrongs redressed and relief obtained . . . .") (quotation mark and citation omitted). And Tennessee courts give remedial statutes "a broad and liberal construction." ***Circle C Constr., LLC v. Nilsen***, 484 S.W.3d 914, 919 (Tenn. 2016). The liberal construction doctrine "allows a court to more broadly and expansively interpret the concepts and provisions within its text." ***Northland Ins. Co. v. State***, 33 S.W.3d 727, 730 (Tenn. 2000); *see also* ***Chattanooga-Hamilton Cnty. Hosp. Auth. v. Bradley Cnty.***, 249 S.W.3d 361, 366 (Tenn. 2008) (holding that remedial legislation "is to be 'applied fairly and broadly to accomplish the ends intended'") (quoting ***Partee v. Memphis Concrete Pipe Co.***, 155 Tenn. 441, 295 S.W. 68, 69 (Tenn. 1927)); ***Cherokee Brick Co. v. Bishop***, 156 Tenn. 168, 299 S.W. 770, 771 (1927) (holding that in liberally construing a statute, the court interprets a statute "in order to accomplish the purpose which the Legislature obviously had in mind"). We therefore are required "to give 'the most favorable view in support of the petitioner's claim[.]" ***Mullins v. State***, 320 S.W.3d 273, 279 (Tenn. 2010) (quoting ***Stewart v. State***, 33 S.W.3d 785, 791 (Tenn. 2000)). Still, "[w]hile a generous construction may be warranted, the interpretation of a remedial statute may not exceed reasonable bounds." ***Chattanooga-Hamilton Cnty. Hosp***, 249 S.W.3d at 366 (citations omitted). As a result, we are not permitted to authorize amendment, alteration, or extension of a statute beyond its obvious meaning, nor are we permitted to create a right of action where none exists. ***Mullins***, 320 S.W.3d at 279 (citations omitted).

Given the liberal interpretation of the ouster statutes, the ***Peters*** case, and the applicable Rules of Professional Conduct, we cannot agree with either Appellee's or the trial court's conclusions in this case. After reviewing the ouster statutes, their purpose is to provide a clear and expedited avenue for the removal of public officials who have committed misconduct or neglected their duties. *See generally* Tenn. Code Ann. §§ 8-47-102 & -103. And the Tennessee General Assembly intended that in addition to the Attorney General and Reporter and citizen petitions, district attorney generals and county and city attorneys would have the power to institute these actions "within their respective jurisdictions." Tenn. Code Ann. § 8-47-103. This means that city attorneys have the power to oust city officials, while county attorneys have the power to oust county officials. *See* ***Jordan***, 397 S.W.2d at 396 (holding that the words "in their respective jurisdictions" means that "[t]he city attorney [is] to prosecute actions of ouster against certain city officials; whereas, . . . the county attorney against county officials"). But as the trial court recognized, it is not uncommon for a city or county attorney to have represented or developed a close relationship with officers within their jurisdiction. Indeed, of the relatively few cases that

- 14 -

deal with ouster actions in Tennessee, both this case and the ***Peters*** case involve a county attorney that represented the very county official sought to be ousted. *See **Peters***, 815 S.W.2d at 166. And because the rules regarding conflicts are applicable to county attorneys, it appears that a conflict like the one at issue in this case is almost certainly likely to arise in this situation. *See* Tenn. R. Sup. Ct. 8, RPC 1.10(d)(1).

Still, as previously discussed, we are to read statutes, particularly remedial statutes, "with the saving grace of common sense" in order to avoid a "a construction which impairs, frustrates or defeats the object of a statute[.]" ***Leech***, 588 S.W.2d at 540; *see also **Chattanooga-Hamilton Cnty. Hosp.***, 249 S.W.3d at 366. "The object of the ouster statutes has been described as 'to rid the public of unworthy officials,' and 'to improve the public service, and to free the public from an unfit officer.'" ***Looper***, 86 S.W.3d at 198 (first quoting ***State ex rel. Milligan v. Jones***, 143 Tenn. 575, 577, 224 S.W. 1041, 1042 (1920); and then quoting ***State v. Howse***, 134 Tenn. 67, 78, 183 S.W. 510, 513 (1915). To this end, the ouster statues place both a duty and, in some situations, a mandate on city and county attorneys to investigate misconduct by officials within their purview and to institute actions seeking their removal. *See* Tenn. Code Ann. §§ 8-47-102 & -103. Thus, it is the responsibility of certain officers to protect the public from unworthy public officials within their jurisdictions. And it is important to note that while the Tennessee Attorney General also has authority to bring an ouster action, the focus of the ouster statutes is on local prosecution, either via the proper city or county attorney, district attorney general, or citizen petition.

Under the trial court's interpretation, however, that local control is significantly undermined. Indeed, the role that city and county attorneys are required to play is essentially written out of the ouster statutes whenever the named city or county attorney develops a conflict from having represented an official—as their duty also requires and which this case and ***Peters*** indicate is not uncommon.[9] To hold that so long as the named city or county attorney is disqualified from personal participation in a case, the entire office of the city or county attorney is prevented from bringing an ouster action not only defeats this purpose but also imputes a conflict to the entire city or county attorney's office in violation of the Tennessee Rules of Professional Responsibility. *See generally* Tenn. R. Sup. Ct. 8, RPC 1.10 (not applying the rule of imputation to attorneys working as public officers or employees).

We agree with both the trial court and Appellee that the Tennessee General Assembly could have clarified the proper procedure to take when the titled county or city attorney is disqualified from participating in an ouster action, as they have done with regard

---

[9] As the complaint in this matter and the trial court's order reflect, the Shelby County District Attorney General also had a conflict from bringing an ouster action. An attempt to bring such an action by a pro tem prosecutor was likewise dismissed for lack of standing. As such, any local efforts to oust Appellee would have been left only to a citizen petition "upon their giving the usual security for costs." Tenn. Code Ann. § 8-47-110.

to the Tennessee Attorney General. *See State ex rel. Com'r of Transp. v. Med. Bird Black Bear White Eagle*, 63 S.W.3d 734, 775 (Tenn. Ct. App. 2001) (holding that when "circumstances involving a conflict of interest due to the Attorney General's personal involvement in a case" arise, statute provides for the employment of special counsel when the governor and the attorney general find that such counsel is needed (citing Tenn. Code Ann. § 8-6-106(a)). No such statute exists for county attorneys.[10] Still, we cannot discount that in the over thirty years since the decision in *Peters*, the Tennessee General Assembly has done nothing to indicate its dissatisfaction with the Tennessee Supreme Court's decision essentially allowing an ouster action to be brought in the county attorney's name despite the existence of a clear conflict of interest. *See Hardy v. Tournament Players Club at Southwind, Inc.*, 513 S.W.3d 427, 444 (Tenn. 2017) (holding that while presuming legislative inaction constitutes acquiescence is "'hazardous . . . at best[,]' . . . 'the fact that the legislature has not expressed disapproval of a judicial construction of a statute is persuasive evidence of legislative adoption of the judicial construction'" (first quoting *Hardy v. Tournament Players Club at Southwind, Inc.*, No. W2014-02286-COA-R9-CV, 2015 WL 4042490, at *16 (Tenn. Ct. App. July 2, 2015) (Gibson, J., dissenting), *rev'd,* 513 S.W.3d 427 (Tenn. 2017); and then quoting *Hamby v. McDaniel*, 559 S.W.2d 774, 776 (Tenn. 1977))). Under these circumstances, we decline to construe the ouster statutes so strictly as to completely prevent their use by county attorneys in situations such as the one in this case. Instead, in delegating her authority to Deputy County Attorney Whitwell, we presume that County Attorney Iverson "discharge[d] [her] duties in good faith and in accordance with the law." *Med. Bird Black Bear White Eagle*, 63 S.W.3d at 775;[11] *see also Manis v. Farmers Bank of Sullivan County*, 170 Tenn. 656, 98 S.W.2d 313, 314 (1936) ("This court is strongly committed to the . . . presumption that a sworn public official has acted lawfully."). So then, we conclude that the ouster statutes do not deprive

---

[10] A Shelby County ordinance does exist concerning the employment of outside counsel. This ordinance is discussed, *infra*.

[11] In *Medicine Bird Black Bear White Eagle*, the trial court discounted a statute that permitted the Tennessee Attorney General to employ special counsel because the statute at issue required that the Attorney General request that special counsel be appointed. *Id.* In other words, in the event of a conflict, the Attorney General was part of the process of requesting his or her replacement. Because of the presumption that public officials will discharge their duties in good faith and in accordance with the law, we held that those concerns were unfounded:

> The Attorney General is an officer of the court and has the statutory responsibility to assure that the various departments of state government receive appropriate legal representation when they are entitled to it. Were a circumstance to arise that prevented the Attorney General from representing a state office or agency in a civil legal proceeding, we presume that the Attorney General would act professionally, ethically, and in good faith and would exercise his or her discretion under [section] 8-6-106 to authorize the governor to employ additional counsel to represent the office or agency entitled to representation.

*Id.* Like in *Medicine Bird Black Bear White Eagle*, the presumption of good faith applies here despite the fact that County Attorney Iverson was the individual to delegate prosecution of this action to Deputy Attorney Whitwell.

Appellant of statutory standing to prosecute this action simply because Deputy County Attorney Whitwell was delegated the authority to bring this action under County Attorney Iverson's "title" despite County Attorney Iverson's conflict of interest. *Peters*, 815 S.W.2d at 166.

We further conclude that nothing in the ouster statutes indicates that Appellant was deprived of statutory standing simply because outside counsel was retained to prosecute this action. While it is true that the Tennessee Supreme Court held that the County Commission could not appoint outside counsel to act as county attorney in *Jordan*, it was the County Commission's lack of power to institute ouster actions that was the issue in that case, not the use of outside counsel itself. *Jordan*, 397 S.W.2d at 336. Indeed, in *Peters*, the county attorney employed outside counsel to prosecute the ouster action and thereafter had little to no involvement in the case. *See Peters*, 815 S.W.2d at 161 & 166 (indicating that the county attorney was represented by two attorneys from a private law firm on appeal).

The Shelby County Code of Ordinances also authorizes the employment of outside counsel in some cases. *See generally* Shelby Cnty. Code § 2-252. Appellee argued in the trial court, however, that the approval of the County Commission was necessary before outside counsel was retained in this case because it constituted "extraordinary litigation":

> Commission approval by resolution shall be required before any outside or special counsel is employed by the county to commence any extraordinary litigation for or on behalf of the county and/or the commission, unless the county attorney certifies to the chairman of the commission that based on reasonable expectations and the proposed hourly rate(s) or contingent fees of counsel that the total compensation of counsel for such matter and related cases will not exceed $50,000.00 in the aggregate.

Shelby Cnty. Code § 2-252(3). Appellant responded that this case did not constitute "extraordinary litigation" because it involved enforcement of the state ouster law. *See* Shelby Cnty. Code § 2-252(2) (defining "extraordinary litigation" as "any litigation other than litigation commenced or pursued by the county in the ordinary course of its usual and customary business affairs and said definition shall exclude any suit filed by the county: . . . [t]o enforce any state law"). The trial court, however, declined to rule on this issue, likely because it was pretermitted by its ruling under the ouster statutes.

In general, this Court only reviews issues that are presented and decided by the trial court. *See Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976) ("This is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are presented and decided in the trial courts . . . ."); *In re Est. of Boykin*, 295 S.W.3d 632, 636 (Tenn. Ct. App. 2008). In other words, "when the trial court fails to address an issue in the first instance, this Court will not consider the issue, but will instead remand for the trial court

to make a determination in the first instance." ***Mid-S. Maint. Inc. v. Paychex Inc.***, No. W2014-02329-COA-R3-CV, 2015 WL 4880855, at \*14 (Tenn. Ct. App. Aug. 14, 2015). This rule has been applied even when our review is de novo. *See, e.g.*, ***Johnson v. Rutherford Cnty.***, No. M2017-00618-COA-R3-CV, 2018 WL 369774, at \*9 (Tenn. Ct. App. Jan. 11, 2018) ("[T]he trial court did not rule on [the] motion for summary judgment; therefore, this Court could not address it in the first instance." (citing ***Dorrier***, 537 S.W.2d at 890)). Here, the trial court did not determine whether Shelby County Code of Conduct section 2-252(2) was violated, nor did it determine what, if any, effect such a violation would have on the prosecution of this case. So we decline to address this question in this appeal.[12]

In sum, we conclude that Appellant does not lack statutory standing under the ouster statutes to prosecute an ouster complaint simply because a conflict of interest required delegation of this matter to a Deputy County Attorney. This case was properly brought by the County Attorney's office under County Attorney Iverson's title. As such, the trial court's order dismissing this appeal for lack of subject matter jurisdiction is reversed.

**C.**

Appellant next asserts that the trial court erred in denying its motion for default judgment. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, judgment by default may be entered." Tenn. R. Civ. P. 55.01. "The 'plain language' of Rule 55.01 shows that entry of default is permissive rather than mandatory." ***Parks v. Mid-Atl. Fin. Co.***, 343 S.W.3d 792, 798 (Tenn. Ct. App. 2011). A trial court's decision to grant or deny a motion for default judgment is therefore left to the trial court's sound discretion. ***Patterson v. SunTrust Bank***, 328 S.W.3d 505, 509 (Tenn. Ct. App. 2010); *see also* ***Broyles v. Woodson***, No. E2004-00402-COA-R3-CV, 2005 WL 378929, at \*6 (Tenn. Ct. App. Feb. 17, 2005) ("Since the granting of a Rule 55.01 motion for default judgment is discretionary, by definition a trial court never is required to grant such a motion unless the failure to do so would be an abuse of discretion."). "Implicit in this standard of review is the underlying proposition that the trial court has discretion to excuse an insignificant delay beyond the normal [time] for filing an answer." ***Parks***, 343 S.W.3d at 798. "It is also clear that a trial court should exercise its discretion in favor of allowing a case to be heard on its merits." ***Id.***

The pleading requirements of ouster actions are governed by Tennessee Code Annotated section 8-47-114, which states as follows:

---

[12] The trial court also declined to address Appellee's agency argument. It is unclear how this argument fares given our conclusion that Appellant did not lack standing under the ouster statutes to bring this action. In any event, because this argument was not addressed by the trial court, we likewise decline to address it in this appeal.

> Upon the filing of the complaint or petition for the writ of ouster, a summons shall issue for the defendant, and there shall accompany the summons and be served upon the defendant a copy of the complaint or petition filed against the defendant, and the defendant shall have the right to answer within twenty (20) days from such service.

The ouster statutes further provide that "[t]he petition and answer shall constitute the only pleadings allowed, and all allegations in the answer shall be deemed controverted, and any and all questions as to the sufficiency of the petition or complaint shall be raised and determined upon the trial of the case[.]" Tenn. Code Ann. § 8-47-115. Tennessee courts have held that the express requirements of sections 8-47-114 and -115 prevail over the Tennessee Rules of Civil Procedure in the event of a conflict. *See* **State v. Stiers**, 571 S.W.3d 706, 709–10 (Tenn. Ct. App. 2018) ("The statute is clear that only a petition and answer are allowed as pleadings, and it is further settled that a litigant may not rely on rules of civil procedure to augment delineations made in the ouster statutes." (citing **State ex rel. Leech v. Wright**, 622 S.W.2d 807, 810–11 (Tenn. 1981) ("We have no hesitancy in holding that if there is any conflict between any express provision of the ouster statutes and the Tennessee Rules of Civil Procedure, the ouster statute should prevail."))). As such, the only proper response to an ouster petition is an answer filed within twenty days of service.

There is no dispute that Appellee did not file an answer within twenty days of the service of the complaint and summons. Instead, Appellee filed a motion to dismiss arguing that the trial court lacked subject matter jurisdiction. Appellant then filed a motion for default judgment, arguing that Appellee had not defended the action as permitted in the ouster statutes, citing **State ex rel. Jones v. Looper**, 86 S.W.3d 189 (Tenn. Ct. App. 2000). Appellee responded that a motion to dismiss was the proper vehicle for raising a lack of subject matter jurisdiction even in an ouster proceeding, citing **State ex rel. Brooks v. Eblen**, 185 Tenn. 566, 206 S.W.2d 793 (Tenn. 1947). In an abundance of caution, Appellee also filed an answer. The trial court denied the motion, and granted Appellee an enlargement of time in which to file an answer.[13]

In **Looper**, this Court did countenance the grant of default judgments in an ouster action. There, two ouster complaints were filed against the defendant property assessor, which were eventually consolidated. 86 S.W.3d at 191. The defendant did not file an answer or otherwise respond in any fashion in the twenty days following service on the complaints. So the petitioners filed motions for default judgment. The defendant was served with notice of the default judgment hearing set for more than thirty days following the notice. *Id.* at 192. The defendant only responded by filing an answer ten minutes before the scheduled hearing. *Id.* The trial court ultimately granted a default judgment against the

---

[13] As previously noted, Appellee filed an answer on September 16, 2024, which was within the enlarged period granted by the trial court.

defendant as to both complaints, finding that there was no excusable neglect to justify the defendant's failure to defend the complaints. Although the defendant moved to alter or amend the trial court's ruling, that motion was denied and an appeal to this Court followed. *Id.* at 193.

On appeal, the defendant argued that because he filed his answer the day of the default judgment hearing, he could not have been found to have failed to defend under Rule 55.01. The defendant also argued that he was entitled to an enlargement of time pursuant to Rule 6.02 of the Tennessee Rules of Civil Procedure, which provides as follows:

> When by statute or by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion, (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done, where the failure to act was the result of excusable neglect, but it may not extend the time for taking any action under Rules 50.02, 59.01, 59.03 or 59.04, except to the extent and under the conditions stated in those rules.[14]

Despite the petitioners' argument that Rule 6.02 should not apply to ouster proceedings, we first held that the Rules of Civil Procedure apply in ouster proceedings unless they conflict with an express provision. *Looper*, 86 S.W.3d at 195 (citing *Wright*, 622 S.W.2d at 810). And because "the ouster statutes do not address the availability of extensions of time within which to file an answer," we concluded that Rule 6.02 was available in ouster proceedings. *Id.* But we noted that the defendant had not filed a motion for an enlargement of time to file an answer, and that even to the extent that the defendant's very-late-filed answer "can be considered to have been accompanied by an implied motion for extension of time in which to answer," the trial court had discretion to deny the motion, particularly after finding that there was no excusable neglect. *Id.* Because the defendant "failed to file an answer or otherwise defend the complaints in these actions in a manner or time period provided by the Rules of Civil Procedure," we held that the trial court had discretion to grant the motions for default judgment. *Id.* at 197.[15]

---

[14] In determining whether neglect is excusable, this Court has considered the following factors:

> (1) the danger of prejudice to the party opposing the late filing, (2) the length of the delay and its potential impact on proceedings, (3) the reason why the filing was late and whether that reason or reasons were within the filer's reasonable control, and (4) the filer's good or bad faith.

*State ex rel. Sizemore v. United Physicians Ins. Risk Retention Grp.*, 56 S.W.3d 557, 567 (Tenn. Ct. App. 2001).

[15] We also soundly rejected the defendant's assertion that default judgment was never permitted

Citing ***Looper***, Appellant contends that the trial court abused its discretion in denying its motion for default judgment. Appellant points out that Appellee failed to file an answer prior to the expiration of the twenty-day time period in section 8-47-114. And Appellee never filed a motion requesting an enlargement of time, nor did the trial court find that there was excusable neglect that would have justified such an enlargement. So then, Appellant contends that the denial of its motion for default judgment was improper.

While ***Looper*** does confirm that a trial court has discretion to grant a default judgment in an ouster proceeding when a defendant fails to "answer or otherwise defend[,]" ***id.***, the Tennessee Supreme Court has held that an answer may not be the only method of defending an ouster action, notwithstanding section 8-47-115. Specifically, in **State ex rel. Brooks v. Eblen**, the Tennessee Supreme Court held that while "[t]he ouster law forbids any response other than an answer[,]" a demurer was permitted "if the petition shows on its face that the officer sought to be removed is one whom the Court has no power to remove under the authority of the ouster law[.]" 206 S.W.2d at 794. As the court reasoned,

> If . . . the Constitution forbids the removal by the Court of the county judge of Roane County, then that official does not come within the provisions of the ouster law and the prohibition thereof with reference to pleadings does not apply to him, and his demurrer would, in that event, be proper.

***Id.***. And of course, "[a] motion to dismiss for failure to state a claim upon which relief can be granted is the equivalent of a demurrer under our former common law procedure[.]" **Luster v. Bargery**, 55 S.W.3d 548, 550 (Tenn. Ct. App. 2000). Thus, a motion to dismiss may be proper in some circumstances under the ouster statutes. *See also* **State ex rel Byrge v. Yeager**, 472 S.W.3d 657, 666 (Tenn. Ct. App. 2015) (affirming the grant of a motion to dismiss for lack of subject matter jurisdiction when the individual sought to be ousted was not holding a public office governed by the ouster statutes).

In the trial court, Appellee argued that under ***Eblen***, she was permitted to file a motion to dismiss because her motion asserted that the trial court lacked subject matter jurisdiction over the case due to Appellant's lack of standing. As a result, she asserted that she did not fail to defend the ouster action, and the trial court properly denied the motion for default judgment under Rule 55.01.

In our view, this case inhabits something of a gray area that cannot be fully resolved by reference either to ***Looper*** or ***Eblen***. In ***Looper***, the defendant made no attempt to defend the action in any manner until the morning of the hearing on the default judgment. Here, there is no dispute that Appellee filed a motion to dismiss attacking the trial court's subject

---

in an ouster action, instead concluding that default judgment furthers the Legislature's purpose that ouster proceedings be conducted expeditiously. ***Id.*** at 198.

matter jurisdiction within the proper timeframe. In a typical case, the filing of a motion to dismiss would be considered an effort to "defend" an action under Rule 55.01 and would toll the time for filing an answer. *See* **Horton v. Tenn. Dep't of Corr.**, No. M1999-02798-COA-R3-CV, 2002 WL 31126656, at *3 (Tenn. Ct. App. Sept. 26, 2002) ("Filing a proper motion to dismiss constitutes 'otherwise defend[ing]' against a lawsuit as contemplated in Rule 55.01, making a default judgment improper." (quoting Tenn. R. Civ. P. 55.01)). But the ouster statutes specify that only an answer may be filed to defend against an ouster action. *See* **Stiers**, 571 S.W.3d 706, 709–10. Yet, a motion to dismiss may be an appropriate action if it attacks the very applicability of the ouster proceedings, as in **Eblen**. There is no dispute in this case, however, that Appellee is the proper type of official subject to the ouster statutes; her attack is that Appellant is not the proper type of petitioner to bring an ouster complaint. And while the trial court granted Appellee an enlargement of time to file her answer, there is no dispute that Appellee filed no motion seeking this relief, nor did the trial court specifically address excusable neglect. *See generally* Tenn. R. Civ. P. 6.02.

As previously discussed, even if a default judgment is authorized by Rule 55.01, the trial court may exercise its discretion to deny it unless that decision amounts to an abuse of discretion. *See* **Broyles**, 2005 WL 378929, at *6. "A court abuses its discretion when it applies an incorrect legal standard or its decision is illogical or unreasonable, is based on a clearly erroneous assessment of the evidence, or utilizes reasoning that results in an injustice to the complaining party." **Bidwell ex rel. Bidwell v. Strait**, 618 S.W.3d 309, 318 (Tenn. 2021) (quoting **Runions v. Jackson-Madison Cnty. Gen. Hosp. Dist.**, 549 S.W.3d 77, 84 (Tenn. 2018)). "Under the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to the propriety of the decision made.'" **Greer v. City of Memphis**, 356 S.W.3d 917, 921 (Tenn. Ct. App. 2010) (quoting **Eldridge**, 42 S.W.3d at 85 (citations omitted)).

Here, although Appellee did not properly answer the complaint in the time permitted by section 8-47-114, unlike the defendant in **Looper**, there can be no dispute that Appellee "otherwise defend[ed]" against the ouster complaint in a manner that was arguably permitted by the Tennessee Supreme Court in **Eblen**. *See generally* **Sizemore**, 56 S.W.3d at 567 (discussing the elements to consider in determining whether neglect is excusable, *supra*, footnote 10). Moreover, there can be little dispute that Appellee's delay in answering was not the result of any bad faith conduct, nor was the delay lengthy. Neither can there be any assertion of prejudice in this case, as Appellee's contention that the trial court lacked subject matter jurisdiction required adjudication before the merits of the ouster complaint could be considered. *See* **Eldridge**, 42 S.W.3d at 85 (noting that challenges to subject matter jurisdiction must be decided first); *cf.* **Hickman v. Tenn. Bd. of Paroles**, 78 S.W.3d 285, 288 (Tenn. Ct. App. 2001) (holding that the trial court did not abuse its discretion allowing an extension of time to file an answer even where the motion for an extension lacked "even a colorable explanation" for the delay, when there was no prejudice to the opposing party in permitting the late filing). Under these circumstances, we cannot conclude that the trial court abused its discretion in denying Appellant's motion for default

judgment.

## IV. Conclusion

The judgment of the Shelby County Circuit Court is affirmed in part and reversed in part, and this matter is remanded for further proceedings consistent with this Opinion. Costs of this appeal are taxed one-half to Appellant the State of Tennessee, upon relation of Marlinee Iverson, County Attorney for Shelby County, and one-half to Appellee Wanda Halbert, for all of which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE